## A08A1081. IN RE ESTATE OF BOSS.
(668 SE2d 283)

RUFFIN, Presiding Judge.
 Raburn Peevy, Johnnie Cox, Jean Sass, Blanche Knight, and Gail Thompson (the "caveators") successfully contested a purported will executed by the late Memphis Azalee Boss in a petition to determine the heirs of Boss's estate. The caveators appeal the order of the probate court awarding their attorney, Robert Hughes, Jr., $64,638.28 in attorney fees from the estate. For reasons that follow, we affirm.
 The facts in this case are largely undisputed. Boss died on August 22, 2005, leaving the following heirs: Raburn Peevy, Johnnie Cox, Blanche Knight, Elaine Barnett, Gail Thompson, Jean Sass, John Allen Peevy, Terry Jordan, and Tim Peevy. Raburn Peevy filed a "Petition for Letters of Administration" for Boss's estate, contending that she died intestate. John Allen Peevy, however, tendered a purported will executed by Boss and filed a petition for probate.[1] Thereafter, the caveators — Raburn Peevy, Cox, Knight, Thompson, and Terry Jordan[2] — contested the will.
 The case went to trial, and the jury found in favor of the caveators.[3] Thereafter, their attorney, Robert Hughes, Jr., filed a motion for attorney fees. The fee contract between Hughes and the caveators provided for a contingency fee rate of 20 percent of the ultimate recovery. Instead of seeking payment from the caveators

---

[1] John Allen Peevy was the primary beneficiary of the purported will.

[2] The caveators state in their brief that "Jordan died during the pendency of this case and his sisters, Thompson and Sass[,] inherited his position in this litigation."

[3] According to the judgment, the jury determined that Boss's will was procured by fraud or misrepresentation.

with whom he had entered a fee agreement, Hughes sought to recover the entire fee directly from the estate, which he alleged benefitted from his services.

Following a hearing, the probate court declined to award Hughes the full 20 percent, instead granting him "reasonable" attorney fees from Boss's estate in the amount of $64,638.28.[4] The court reasoned that

> the estate was benefitted from the invalidation of a Will procured by fraudulent practices. However, only four heirs at law entered into a contingency fee contractual relationship with [Hughes]. One of the remaining heirs at law, John Allen Peevy, will receive less from the estate as a result of the invalidation of the Will. Thus, the Court finds that, under the facts of this case, it is fair and equitable that Mr. Hughes receive his actual attorney's fees[,] but not his contractual contingency fees directly from the estate. . . . Nothing in this Order shall be interpreted to prevent Mr. Hughes from seeking his contractual [attorney] fees from his clients with the appropriate setoff for the money received out of the estate pursuant to this Order.

The caveators appeal, challenging the amount of the attorney fees award to Hughes.

1. The appellee, John Allen Peevy, requests that we affirm the $64,638.28 attorney fee award. Nevertheless, he argues in his brief that there is no statutory basis for awarding attorney fees to a successful will caveator and relies on cases from other jurisdictions to support his apparent position that attorney fees for a caveator should not be paid by the estate unless there is proof that the estate as a whole benefitted.

But Peevy did not file a cross-appeal. "[A]s a general rule[,] a cross-appeal is required for an appellee to preserve an enumeration of error concerning an adverse ruling."[5] "However, a ruling that becomes *material* to an enumeration of error urged by an appellant *may* be considered by the appellate court without the necessity of a cross-appeal."[6] Here, we can address the appellants' challenge to the amount of award without addressing the appellee's argument. Thus, because Peevy failed to raise his argument — that the probate court

---

[4] This amount was derived from the time records and billing statements provided by Hughes, including his hourly rate.

[5] *Brady v. Elevator Specialists*, 287 Ga. App. 304, 306 (1) (653 SE2d 59) (2007). See OCGA § 5-6-38 (a); *City of Atlanta v. Miller*, 256 Ga. App. 819, 822 (4) (569 SE2d 907) (2002).

[6] (Emphasis supplied.) *Ga. Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 711 (1) (363 SE2d 140) (1987). See *Electrical Distrib. v. Turner Constr. Co.*, 196 Ga. App. 359, 361 (2)

abused its discretion in holding that the caveators' attorney fees should be paid by Boss's estate — in a properly filed cross-appeal, the issue is not before us and will not be considered in this opinion.[7]

2. Pretermitting whether the probate court erred in requiring the caveators' attorney fees to be paid by the estate, we find no merit to the caveators' challenge to the amount of the attorney fees award.

First, the caveators argue that because John Allen Peevy's three siblings — who are apparently entitled to five percent of the intestate estate — did not object to the motion for attorney fees and did not appeal the probate court's order, "there was no objection to the [attorney fee motion] from [ninety-five percent] of the heirs [and] the trial court should have granted the . . . motion to the extent of [ninety-five percent] at a minimum." But the caveators have not supported this argument with citation of authority, and we are aware of none.

Moreover, we reject the caveators' apparent position that the probate court was *required* to award Hughes 20 percent of the estate's value from the estate because his contingency fee agreement with the caveators specified that amount. Hughes contracted with his individual clients, the caveators, for a 20 percent contingency fee. He had no such agreement with the estate. Thus, while he may be contractually entitled to 20 percent of the estate's value from his clients, his fee agreement with the caveators does not — as the probate court properly found — bind the estate.

Attorney fee awards, including those involving contingency fees, must be supported by proof that the fee "was a valid indicator of the value of the professional services rendered."[8]

A court may consider a contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an award of attorney fees. But, evidence of the existence of a contingent fee contract, without more, is not sufficient to support the award of attorney fees. An attorney cannot recover for professional services without proof of the value of those services. A naked assertion that the fees are "reasonable," without any evidence of hours,

(395 SE2d 879) (1990) (appellee's defense was material to whether grant of summary judgment was correct and could be considered in the absence of a cross-appeal).

[7] See *Burnette v. Bradley*, 190 Ga. App. 427, 429 (2) (379 SE2d 225) (1989).

[8] (Punctuation omitted.) *Rowen v. Estate of Hughley*, 272 Ga. App. 55, 60 (2) (611 SE2d 735) (2005).

rates, or other indication of the value of the professional services actually rendered is inadequate.[9]

Here, the probate court, after reviewing the evidence, including Hughes's time records and billing statements, determined that $64,638.28[10] was the reasonable value of Hughes's attorney fees.[11] Under these circumstances, including the absence of a binding fee arrangement between the estate and Hughes, and given the evidence presented, we find no abuse of discretion in the probate court's determination that $64,638.28 was a reasonable fee to be paid by the estate.[12]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED OCTOBER 1, 2008.

*Robert W. Hughes, Jr.*, for appellant.
*Charles A. Tingle*, for appellee.

---

[9] Id.

[10] As stated in the probate court's order, Hughes "provided that at his hourly rate, the total fee charged [the caveators] would have been $64,638.28." The estate consisted of an account containing approximately $750,000, a judgment of approximately $250,000, and a parcel of land valued at approximately $225,000. Thus, Hughes sought approximately $245,000 in fees under the 20 percent contingency fee agreement.

[11] We reject the caveators' assertion that the trial court was required to award Hughes 20 percent of the estate's value because it did not specifically rule that the requested contingency fee was unreasonable. Implicit in the probate court's ruling was a determination that the amount sought under contingency fee agreement was unreasonable, given that it specifically concluded that $64,638.28 constituted a reasonable amount of Hughes's attorney fees payable from the estate.

[12] See *Rowen*, supra.