## S10A0452. GONZALEZ v. CROCKET.

(696 SE2d 623)

HINES, Justice.

In this contempt case, the trial court ruled that certain real property was not encompassed in the final judgment and divorce decree, and thus remained the joint property of the parties. This Court granted an application for discretionary appeal, and we now affirm the trial court's order.

On December 11, 1995, Jenelle Maria Crocket, f/k/a Gonzalez, ("Crocket") and her then-husband, Ruben Mendoza Gonzalez, purchased a 26.9-acre tract of land for $53,000. The tract was titled in both of their names. To facilitate financing for the construction of a house, they subdivided the property to create a five-acre tract, upon which the house was built, surrounded by the remaining 21.9 acres. While the five-acre residential parcel was encumbered with deeds to

secure debt,[1] it does not appear that the 21.9 acre tract was ever put forth as security for a loan. The properties were taxed separately, but the 21.9-acre property was never assigned a street address separate from that of the five-acre parcel; no fences or dividing lines separated the tracts.

The couple decided to divorce and, on June 28, 2004, they executed a settlement agreement. A final judgment and decree of divorce dissolving the marriage was entered on August 26, 2004; it incorporated the June 28, 2004 agreement. That agreement provided in part:

> The parties agree that [Gonzalez] shall retain permanent exclusive possession of the marital residence at 1846 Glenloch Road, Franklin, Georgia 30217. [Gonzalez] shall execute any and all documents necessary to remove [Crocket's] name from said residence. [Gonzalez] agrees to refinance the marital residence in his name only and give to [Crocket] the amount of $25,000.00 representing her portion of the equity out of the marital residence.[2]

Earlier, on June 21, 2004, Gonzalez refinanced the loans for the five-acre tract upon which the house was located, solely in his name; he received $18,526.72, which he paid to Crocket pursuant to their agreement. On June 29, 2004, Crocket executed a quitclaim deed in Gonzalez's favor for the five-acre tract.

On July 2, 2007, Gonzalez filed a petition to have Crocket cited for contempt for failing to provide him with a quitclaim deed to the 21.9-acre tract. Crocket filed an answer, asserting that the term "marital residence" applied only to the five-acre tract, and counterclaimed for contempt, alleging that Gonzalez still owed her $5,980 of the $25,000 he was to pay her for her share of the equity in the marital residence.

The trial court did not find Crocket in contempt,[3] rather ruling that the parties' agreement did not address the status of the 21.9-acre tract, the ownership status of that tract was therefore unaffected by the final judgment and decree of divorce, and thus the 21.9-acre tract remained jointly owned by the two parties. See *Messaadi v. Messaadi*, 282 Ga. 126, 127 (1) (646 SE2d 230) (2007); *Newborn v. Clay*, 263 Ga. 622, 623-624 (436 SE2d 654) (1993). Gonzalez contends that in so

---

[1] Two loans, totaling $191,000, were secured by the real estate.

[2] The agreement also required the parties to "execute all documents, perform all acts, and do all things necessary to transfer any of the assets, or to effectuate any of the provisions and conditions" of the agreement.

[3] The trial court did not address Crocket's counterclaim for a contempt citation.

ruling, the trial court modified the parties' settlement agreement, and hence modified the final judgment and decree of divorce that incorporated that agreement.

> A court may not modify a previous decree in a contempt order. [Cit.] However, a court may always interpret and clarify its own orders. [Cits.] The test to determine whether an order is clarified or modified is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification. [Cit.] "The trial court has the power to see that there be compliance with the intent and spirit of its decrees and no party should be permitted to take advantage of the letter of a decree to the detriment of the other party." [Cit.] The trial court in a contempt case has wide discretion to determine whether his orders have been violated. His determination will not be disturbed on appeal in the absence of an abuse of discretion. [Cits.]

*Cason v. Cason*, 281 Ga. 296, 297 (1) (637 SE2d 716) (2006). Gonzalez fails to show that the trial court modified its decree, rather than clarified it.

> It has long been the rule that title to property not described in a verdict or judgment is unaffected by the decree and remains titled in the name of the owners as before the decree was entered. [Cits.] The rule of law . . . is clear [that] . . . a divorce decree must specifically describe and dispose of property in which both parties have an interest or the decree will not divest either party of their interest in the property. This is true although title to [other] property . . . is adjudicated, [cit.], and although one party . . . claims after the fact that certain real property not specifically described in the decree was meant to be included in the disposition of property. Because the property at issue was not specifically described in . . . the divorce decree, title to the property was unaffected by the decree and remained titled in the names of both [parties]. . . . [Cit.]

*Messaadi*, supra at 127 (1). The only realty described in the decree is "the marital residence at 1846 Glenloch Road. . . ." Gonzalez asserts that this term described both tracts of land, but the trial court did not err in clarifying that it did not.

Prior to executing their agreement, the parties divided their real property, with the marital home sitting on only the five-acre tract.

They made payments to relieve the debt on the house property, but no such payments on the separate tract. They also paid taxes separately for the two properties. Under the divorce settlement agreement, Gonzalez was "to refinance the marital residence in his name only. . . ." That he did, and refinanced the debt on the five-acre tract, and its attendant house; he did not attempt to secure financing on the 21.9-acre tract. His act of refinancing "the marital residence in his name only" had nothing to do with the 21.9-acre tract, and title to it was unaffected. Nonetheless, Gonzalez averred that it was his understanding that, under the agreement, Crocket was to convey to him title to both tracts of property, and that he did not see the quitclaim deed until a year after Crocket executed it. He did not seek a contempt citation for another two years. On at least two occasions after Crocket executed the quitclaim deed, Gonzalez paid half of the taxes on the 21.9-acre parcel.[4] Accordingly, Gonzalez's own acts show that he considered the term "marital residence" to encompass only the five-acre parcel.

Nor is such a conclusion regarding the parties' intent contrary to the language of the agreement.

> It is well-established that the usual rules of contract construction should be employed when determining the meaning and effect of a divorce settlement agreement. [Cits.] The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement. If that intention is lawful and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical and arbitrary rules of construction.

*Pate v. Pate*, 280 Ga. 796, 796-797 (1) (631 SE2d 103) (2006). The mere fact that the agreement did not "control the disposition of property jointly owned by the parties does not make it an ambiguous instrument." *Lee v. White*, 249 Ga. 99, 101 (1) (b) (286 SE2d 723) (1982).

Gonzalez also urges that the opinion in *Messaadi*, supra, stands for the proposition that the language "marital residence at 1846 Glenloch Road" requires that the term also encompasses the 21.9-acre tract, since it was never assigned a street address different from that of the lot upon which the house sat. However, this argument reads too much into the factual details of *Messaadi*. In that case, the wife was awarded the "marital residence located at" a specific

---

[4] Crocket avers that the purchase money for the original 26.9-acre tract came from an inheritance of hers.

address, and the husband asserted that it was error not to include the adjacent unimproved lot, which held a different address, in the order, and to award him half of it; the wife urged that the adjacent lot was "part and parcel" of the marital residence. This Court held that the decree failed to specifically describe the adjacent lot, and thus the lot remained titled as it was before the decree. However, the fact that the adjacent lot in *Messaadi* had a separate address, and was not embraced by an award of the "marital residence located at" a stated address, does not mean that use of the term "marital residence" in concert with a specific address will necessarily embrace a separate lot when there is *not* a separate address. It is far more relevant that in each case, the properties at issue were separately titled, and treated by the parties as separate. Nothing in *Messaadi* alters the conclusion that in their agreement, the term "marital residence" referred only to the five-acre tract specified therein. The trial court's order clarifying its ruling was not contrary to the intent of the agreement, and the court did not abuse its discretion in failing to hold Crocket in contempt.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Jack F. Witcher, Daniel B. Greenfield*, for appellant.
*T. Michael Flinn*, for appellee.