## S10A0710. DeRYKE v. TEETS.
### (702 SE2d 205)

HINES, Justice.

This Court granted a discretionary appeal to Henry Steven DeRyke, as the administrator of the estate of Christina Teets, DeRyke's deceased daughter and the ex-wife of Brant Teets, to consider whether the trial court erred in ruling that Section 3 of the Teetses' settlement agreement incorporated into their divorce decree is unambiguous and that Ms. Teets intended to grant her employee benefits to Mr. Teets, including whether Ms. Teets's failure to change her designated beneficiaries means that she voluntarily provided

benefits to Mr. Teets "at [a] subsequent date" within the meaning of Section 3. For the reasons that follow, we reverse and remand.

Brant Teets ("Ex-Husband") and Christina Teets ("Ex-Wife") were married in 2003, and during the marriage, Ex-Wife was employed by the General Electric Company ("GE"). Shortly after the marriage, Ex-Wife executed a "GE Benefits Plans Beneficiary Designation," naming Ex-Husband as the 100% beneficiary of all her GE benefit plans. In August 2008, Ex-Husband, through counsel, filed a petition for divorce; it was anticipated that the divorce would be uncontested and Ex-Wife did not retain an attorney. Approximately two weeks after the filing of the divorce, the parties entered into a Settlement Agreement ("Agreement"), which was drafted by Ex-Husband's attorney. Paragraph 3 of the Agreement states:

> Each Party expressly waives all of his or her right, title, and interest in and to any pension, profit sharing, or employee benefits plans of the other Party. This provision expressly includes 401(k)s, retirement plans, pension plans, and profit-sharing plans. This provision shall not prohibit a Party from voluntarily providing benefits from his or her plan to the other Party at any subsequent date. Pension, profit sharing, and employee benefit plans are defined to exclude any and all Social Security or other governmental benefits the Parties may be entitled to by virtue of marriage.

The Agreement was expressly incorporated into the parties' final judgment and decree of divorce ("Decree") which was entered on September 25, 2008. Five days after the divorce, the 34-year-old Ex-Wife committed suicide; she died intestate. At the time of her death, Ex-Wife had a $200,000 life insurance death benefit and an account of accumulated securities valued at approximately $42,000 (collectively, the "benefits").[1] On January 5, 2009, Ex-Husband made a claim for Ex-Wife's benefits by filing a GE "Beneficiary Claim Form." On January 16, 2009, DeRyke, on behalf of Ex-Wife's estate made a claim for those same benefits. On March 17, 2009, the insurance company administering the benefits denied DeRyke's claim because Ex-Husband was the named beneficiary of record. On April 29, 2009, Ex-Husband filed a complaint for declaratory action against DeRyke, as estate administrator, in the United States District Court for the Northern District of Georgia ("federal suit"), seeking declarations that Ex-Husband should be permitted to obtain and retain all of the benefits. By letter dated May 18, 2009, counsel

---

[1] There is evidence that the Ex-Wife also had a pension plan worth approximately $6,000.

for DeRyke made demand, inter alia, that Ex-Husband dismiss the federal suit and comply with the waiver provisions of the Agreement incorporated into the Decree. On May 29, 2009, DeRyke filed the present state court action, an application for citation of contempt, against Ex-Husband asserting that Ex-Husband had unambiguously waived his right to retain any of Ex-Wife's benefits by virtue of the Agreement, and that he violated the Decree by making a claim for the benefits and by failing to execute instruments necessary to give full force to the Agreement as incorporated into the Decree. Ex-Husband moved to stay the proceedings in the contempt action based on the pending federal suit. Following a hearing, on September 15, 2009, the superior court entered the order at issue, denying the application for citation of contempt.[2] In so doing, the superior court found that the Agreement was "complete, clear, and unambiguous," that Ex-Wife had the opportunity to change her employee benefit designation form but did not do so, and there was no evidence to show that Ex-Wife did not intend to confer the benefits upon Ex-Husband; therefore, there was no willful violation of the incorporated Agreement for which Ex-Husband could be held in contempt of court.[3]

1. It is undisputed that the benefits are subject to the provisions of Paragraph 3 of the Agreement. Therefore, the threshold question is the meaning of Paragraph 3. In that regard, it is well-established that the usual rules of contract construction are to be utilized in determining the meaning and effect of a settlement agreement incorporated into a decree of divorce, with the cardinal rule being to ascertain the intent of the parties at the time they entered the settlement agreement. *Gonzalez v. Crocket*, 287 Ga. 430, 433 (696 SE2d 623) (2010). But, when a contractual term of a settlement agreement incorporated into a divorce decree is clear, unambiguous, and capable of only one interpretation as written, the plain meaning of the provision must be strictly enforced. *Page v. Baylard*, 281 Ga. 586, 587 (1) (642 SE2d 14) (2007). In this case, the superior court found the language at issue to be "complete, clear, and unambiguous," and indeed it is; however, it completely, clearly, and unambiguously expresses the intent of the parties that the beneficiary spouse

---

[2] The order also contained the finding that the Ex-Husband's intent was to keep the Ex-Wife as his designated beneficiary for his accumulated employee benefits after the Decree. Additionally, the order denied the motion for stay of court proceedings.

[3] In his brief, DeRyke represents that the administrative appeal of the denial of benefits was denied, the life insurance proceeds have been paid to Ex-Husband and other benefits were expected to be paid to him in the near future, Ex-Husband's counsel is holding the funds "in trust" pending the decision in the present appeal, and that the parties mutually stipulated to a dismissal of the federal suit, with the result that the present case is the only litigation between the parties remaining.

is releasing any and all interest in the benefits at the time of divorce. *Kruse v. Todd,* 260 Ga. 63 (389 SE2d 488) (1990). Therefore, the Agreement operated as a complete waiver of the Ex-Husband's beneficiary designation. *Young v. Stump,* 294 Ga. App. 351 (669 SE2d 148) (2008). Even assuming arguendo, that the cited language required construction for the purpose of determining the parties' intent, the following third sentence in Paragraph 3 states that a spouse may voluntarily provide benefits to the other spouse "at any *subsequent* date." (Emphasis supplied.) This reinforces that the parties intended that the preceding language was to operate as an immediate release of any claim to the other's benefits; this third sentence merely gave the parties the option to, in the future, override the blanket waiver of benefits by taking an *affirmative* step to provide benefits to the other spouse.

Indeed, the gravamen of Ex-Husband's argument is not that he did not waive his claim to the benefits pursuant to the Agreement, but rather that under the language of the third sentence of Paragraph 3, that Ex-Wife "voluntarily provided" the benefits to him at a subsequent date by not changing her designated beneficiary form. However, the argument is unavailing. In *Young v. Stump,* supra, the Court of Appeals was faced with a similar situation of inaction giving rise to a claim for a decedent's benefits by the divorced spouse. The issue in that case was whether the decedent's former wife relinquished her interest as beneficiary in the decedent's IRA pursuant to a waiver provision in their divorce settlement agreement, and in spite of the fact that the decedent failed to change the designation of the former wife as beneficiary of the IRA prior to his death. Those parties were divorced in 2000, and their settlement agreement, which likewise was incorporated into the final judgment and decree of divorce, contained a section governing "Retirement, IRAs, and Profit Sharing Plans," which provided in relevant part that:

> Husband shall have all right, title, and equity in and to any retirement account which is presently titled in his name, or which was established for his benefit, including, but not limited to ... IRAs. ... Wife shall make no claim to or against [any such account] and herewith specifically waives and relinquishes any and all claims which she may have to same.

During the marriage, the husband maintained an IRA in his name and designated the wife as the beneficiary. He died in 2006, without changing the beneficiary, and in 2007, the former wife sent the fund operator a letter of instruction requesting that the funds in the IRA be transferred into an account in her name; the funds were trans-

ferred into three accounts. Thereafter, the executrix of the deceased husband's estate demanded that the former wife pay the proceeds of the IRA to the estate, but the former wife refused. The executrix then filed suit to recover the funds, plus interest and attorney fees, as well as punitive damages and moved for partial summary judgment as to all legal claims except punitive damages; the former wife moved for summary judgment on all claims. The trial court granted the executrix's motion and denied that of the former wife, and she appealed. The Court of Appeals affirmed the summary judgment granted to the executrix after finding that it was an unreasonable construction of the parties' settlement agreement to allow the former wife to receive the proceeds of the IRA, even though she agreed to make no claim to it and specifically waived any and all of her claims to it. The fact that the deceased husband failed to remove the name of his ex-wife as beneficiary of the IRA on the pertinent documents with the operator of the fund did not alter the fact of the clear waiver of claim to the monies by the former wife under the settlement agreement. Id.

There, as in the present case, there was no affirmative act by the former spouse/benefit holder so as to constitute an attempt to counter or override the relinquishment of rights or claims under the parties' agreement. And, the wisdom of requiring such an affirmative act is borne out by the tragic circumstances of the present case, as well as general policy concerns underlying the encouragement of such divorce settlements. In *Young v. Stump*, there was approximately a six-year lapse between the time of the divorce decree/effective date of the settlement agreement and the event of the husband's death; in other words, the husband had almost six years in which to change the beneficiary designation to one other than his ex-wife. The temporal frame and circumstances of the present case portray an even more compelling situation for the necessity of an affirmative act on the part of the deceased former spouse in order to circumvent the clear intent of the parties' agreed-to waiver provision. There was only approximately a month's time between the Ex-Husband's filing for divorce/execution of the Agreement and the granting of the divorce, and less than a week after the divorce when the Ex-Wife took her own life. Thus, the opportunity to make the beneficiary change was severely limited. Moreover, the Ex-Wife's obviously distraught state of mind following the divorce cannot be discounted as a causal element in her failure to alter the benefits documents. But, speculation of motivation for the failure to act cannot and should not substitute for concrete action on the part of the Ex-Wife. This is especially true in this case in which there is the added element of language allowing for the voluntary providing of benefits at a date subsequent to the effective waiver. The require-

ment of an affirmative act in circumstances like the present is justified as a general matter as well. A plain purpose of language like that in the waiver provision in this case is to prevent any claims to such benefit plans by one of the divorced spouses in the event the other dies before a change in beneficiary can be effected. Simply, in such circumstances, inaction is insufficient to vitiate such an unequivocal waiver. Compare *Darroch v. Willis*, 286 Ga. 566 (690 SE2d 410) (2010) (contempt proceeding arising from former husband's non-compliance with divorce decree's provision requiring him to remove former wife's name from mortgage on marital residence within 30 days after former husband's remarriage).

2. As to any determination of the Ex-Husband's contumatious conduct by virtue of his failure to abide by the Agreement, the terms of which this Court has decided adversely to him, any initial finding of wilfulness and the question of contempt is for the trial court. *Bradley v. Adams*, 240 Ga. 129, 130 (239 SE2d 681) (1977); see also *Barrett v. Barrett*, 242 Ga. 250 (248 SE2d 655) (1978).

Accordingly, the judgment of the superior court is reversed and the case is remanded to that court for consideration consistent with this opinion.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED NOVEMBER 8, 2010.

*Stearns-Montgomery & Associates, Mary Stearns-Montgomery, Jordan J. Hendrick*, for appellant.
*Kaufman, Miller & Sivertsen, Robert J. Kaufman, Jason S. Adler, Vito S. I. Loiacono*, for appellee.