S12A1042. FLOYD v. FLOYD.

(732 SE2d 258)

BLACKWELL, Justice.

Kurt A. Floyd, Sr., and Livia M. Floyd were divorced in 2008. The decree of divorce incorporates the settlement of the parties, in which Kurt and Livia agreed that Kurt would retain title to, and possession of, the marital residence. The decree and incorporated settlement required Kurt to refinance the existing mortgage on the marital residence and to use the proceeds to pay Livia for her share of the equity. If Kurt were unwilling or unable to refinance the marital residence, the decree and incorporated settlement required him, within 90 days of the entry of the decree, to list the marital residence for sale at its fair market value or a price mutually agreeable to the parties. On cross-motions for contempt, the court below found that Kurt violated the terms of the decree in several respects, including by failing to refinance or list the marital residence, and it held Kurt in contempt of the decree. The court directed Kurt to purge his contempt with respect to the marital residence by making a quitclaim deed for the residence in favor of Livia. Kurt appeals from the contempt order, as well as the denial of his cross-motion for contempt.[1]

1. We turn first to the contention that the court below impermissibly modified the decree by directing Kurt to purge his contempt by executing a quitclaim deed in favor of Livia. It is settled that, "[w]hile

---

[1] In her brief to this Court, Livia contends that the court below erred when it denied in part her motion for contempt and effectively relieved Kurt of his obligation to pay a share of certain uninsured medical expenses of their children. Livia failed, however, to file a cross-appeal, and an appellee ordinarily must file a cross-appeal to preserve a claim of error, except when the claim of error is material to, and intertwined with, a claim of error properly raised by the appellant. *Georgia Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 711 (1) (363 SE2d 140) (1987). Here, we can fully address the claims of error pressed by Kurt in his appeal without addressing the additional claim of error urged by Livia in her brief. Because Livia failed to raise her additional claim of error in a cross-appeal, that additional claim of error is not properly before us, and we will not consider it. *In re Estate of Boss*, 293 Ga. App. 769, 770-771 (1) (668 SE2d 283) (2008).

the trial court has broad discretion to determine whether the decree has been violated and has authority to interpret and clarify the decree, it does not have the power in a contempt proceeding to modify the terms of the agreement or decree." *Jett v. Jett*, 291 Ga. 56, 58 (2) (727 SE2d 470) (2012) (citation and punctuation omitted). See also *Greenwood v. Greenwood*, 289 Ga. 163, 164 (709 SE2d 803) (2011). "Although the contempt order may seem reasonable, it violates the firm rule we have established against modifying the property division provisions of a final divorce decree." *Doane v. LeCornu*, 289 Ga. 379, 381 (1) (711 SE2d 673) (2011) (citation and punctuation omitted). "Those provisions equitably divide marital property between the parties, and we have not allowed trial courts later to compel a party who was awarded a specific asset to sell or otherwise convert that asset in order to comply with some other provision of the decree." *Darroch v. Willis*, 286 Ga. 566, 570-571 (3) (690 SE2d 410) (2010) (citations omitted). The divorce decree in this case does not specify that the marital residence is to be conveyed to Livia if Kurt fails to comply with his obligation to either refinance or list it. Consequently, the requirement in the contempt order that Kurt execute a quitclaim deed in favor of Livia amounts to an impermissible modification, not an interpretation, of the divorce decree, and that portion of the contempt order must be reversed. *Doane*, 289 Ga. at 381 (1).

Livia argues that Kurt has waived his contractual interest in the marital residence by his contemptuous conduct, specifically by failing to refinance the marital residence, put it on the market for sale, or pay Livia her share of the equity and by occupying the residence for more than 15 months without paying the mortgage.[2] But a question of contractual waiver is not the question with which we are presented. Whether or not Kurt waived any contractual rights that he enjoyed as a result of his settlement with Livia,[3] that settlement was incorporated into the decree of divorce, and the court below was not exercising any power to reform a contract, but rather its power to address

---

[2] Livia also argues that Kurt abandoned his interest in the property. But Kurt owns a fee interest in the marital residence, "and title to real property cannot pass by mere abandonment." *1845 La Dawn Lane v. Bowman*, 277 Ga. 741, 742 (3) (594 SE2d 373) (2004).

[3] Even if that were the issue before us, the evidence does not show an essential element of waiver, namely the "voluntary relinquishment of some known right, benefit, or advantage, which, except for such waiver, the party otherwise would have enjoyed." *Hathcock v. Hathcock*, 246 Ga. 233, 234 (1) (271 SE2d 147) (1980) (citation and punctuation omitted). Although one may waive a contractual right by his conduct, it is well settled that

> where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible.

contempt of its judgment. "The rights of the parties after a divorce is granted are based not on the settlement agreement, but on the judgment itself." *Walker v. Estate of Mays*, 279 Ga. 652, 653 (1) (619 SE2d 679) (2005) (citation and punctuation omitted). See also *Jordan v. Jordan*, 313 Ga. App. 189, 191 (1) (721 SE2d 119) (2011). So, Livia's motion for contempt "is founded on the final decree, and not on the underlying agreement." *Walker*, 279 Ga. at 653 (1). And Kurt's rights under that agreement cannot be waived by conduct, as "[t]he obligations and rights created by an incorporated settlement agreement can be affected only by means of an action addressing the underlying divorce decree itself."[4] *Jordan*, 313 Ga. App. at 191 (1) (quoting *Walker*, 279 Ga. at 653 (1)) (citation and punctuation omitted). Although a decree based on the agreement of the parties may be set aside in an appropriate case under OCGA § 9-11-60 (d), the subsequent failure of a party to meet his obligations under the decree is not enumerated in that statute as a ground upon which the decree may properly be set aside. *City of Rincon v. Couch*, 272 Ga. App. 411, 413-414 (3) (612 SE2d 596) (2005). "Parties cannot, on their own, extinguish a court order [by alleged violations of it] — an order may be modified or vacated only by the court or by operation of law." *Bradley v. State*, 252 Ga. App. 293, 294 (556 SE2d 201) (2001). The decree and incorporated settlement in this case were never modified by the court below or by operation of law, and they cannot be modified by the failures of Kurt to comply with his obligations, however egregious, or modified in a contempt proceeding.

"Our ruling does not mean that the trial court is left with no effective means of enforcing the divorce decree." *Darroch*, 286 Ga. at 571 (3). Kurt "is still obligated to refinance [or list] the marital residence, and the trial court has means to compel his compliance,

---

*NW Parkway v. Lemser*, 309 Ga. App. 172, 177-178 (3) (709 SE2d 858) (2011). That Kurt failed to refinance the marital residence, failed to list it for sale, failed to pay Livia her share of the equity, and continued to occupy the marital residence without paying the mortgage is not so manifestly consistent with an intent to relinquish his entire share of the equity to Livia that no other reasonable explanation of his conduct is conceivable.

[4] In her brief, Livia argues that "[s]ettlement agreement[s] in divorce cases must be construed in the same manner and under the same rules as all other contractual agreements." See *Jones v. Jones*, 280 Ga. 712, 714 (1) (632 SE2d 121) (2006); *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) (561 SE2d 96) (2002). That is true enough, but the construction of an agreement and whether its provisions can be waived after it is incorporated into a divorce decree are very different questions. See *Stevens v. Stevens*, 74 Cal. Rptr. 54, 60 (Cal. App. 1968) ("the consensus . . . is that while a consent judgment is contractual in its nature and should be construed as though it were a contract, it cannot be vacated merely because of a subsequent failure to perform a condition on which the consent was based, and unless it is vacated or set aside in the manner provided by law it stands as a final disposition of the rights of the parties thereto").

including incarceration." *Jett*, 291 Ga. at 59 (2) (citation omitted). And perhaps Kurt might decide on his own to convey his interest in the marital residence to Livia by quitclaim deed so as to fulfill

> his obligations and avoid these consequences. If that happens, however, it will be based upon his decision to take that action with the house specifically awarded to him in the divorce decree, rather than the trial court's impermissible direct modification of that component of the decree's property division.

*Doane*, 289 Ga. at 382 (1).

2. We turn now to the other claims of error that Kurt raises on appeal. First, Kurt contends that the court below erred when it held him in contempt for his failure to carry medical insurance to cover the children and when it required him to reimburse Livia for the cost of medical insurance premiums that she paid during the time that Kurt failed to secure the required coverage.[5] In pertinent part, the incorporated settlement includes the following provisions, which Kurt claims are ambiguous:

> The Wife may seek a more economical health insurance policy, and for so long as health insurance is made available at a reasonable rate through Husband's place of employment, Husband shall maintain his current health insurance covering the minor children. . . . Husband shall be responsible for said cost of insurance for each minor child for as long as Husband has a child support obligation for that child; however, if Wife is offered more economical insurance which is comparable to the insurance currently carried by Husband, then Wife shall be able to maintain health insurance for the minor children and to pay the premiums associated with said insurance. As dictated by the current child support guidelines, the cost of health insurance is calculated into the formula which determines the amount each party is obligated to pay for child support.

---

[5] The portion of the contempt order that requires reimbursement of these premiums appears to confuse the identifying terms "Plaintiff" and "Defendant." At least part of the confusion was probably caused by the fact that each party filed a motion for contempt, and so each was identified variously as the plaintiff with respect to his or her own motion and as the defendant with respect to the other party's motion. But the parties agree that the court below ordered Kurt to reimburse Livia for premiums that she paid and that he failed to pay. Because any other meaning would make no sense, we share this understanding.

According to Kurt, it is unclear whether he is required to maintain health insurance if it no longer is available at a reasonable rate from his employer or if Livia is offered a comparable policy which is more economical.

As this Court has explained, "[t]he controlling principle to be applied in interpreting decrees based on agreement of the parties is to find the intent of the parties by looking to the four corners of the agreement." *Crosby v. Lebert*, 285 Ga. 297, 299 (676 SE2d 192) (2009) (citation and punctuation omitted). "But, when a contractual term of a settlement agreement incorporated into a divorce decree is clear, unambiguous, and capable of only one interpretation as written, the plain meaning of the provision must be strictly enforced." *DeRyke v. Teets*, 288 Ga. 160, 162 (1) (702 SE2d 205) (2010) (citation omitted). It is true that the incorporated settlement in this case requires Kurt to maintain his existing medical insurance for only so long as it is available through his employer at a "reasonable rate." Because Kurt lost his job, he could not be held in contempt for failing to maintain his existing insurance. But the agreement separately requires Kurt to be "responsible" for the cost of medical insurance for each minor child born of the marriage for as long as he has an obligation to pay support for that child. So, regardless of the loss of his existing insurance, Kurt continued to be "responsible" for the cost of insurance.[6] He is, therefore, accountable for the cost of medical insurance for the children. See *Blair v. Blair*, 272 Ga. 94, 96 (1) (527 SE2d 177) (2000) ("court's determination that the final judgment and decree of divorce contemplates that Mr. Blair would pay the expense of a replacement health insurance policy providing coverage equivalent to that in [a previous] policy is supported by the clear language of the judgment").

The subsequent provision, which concerns an offer to Livia of comparable, but more economical, insurance, does not relieve Kurt of his responsibility for the cost of medical insurance. Instead, that provision merely allows Livia to secure and maintain a less expensive health insurance policy and to "pay" the associated premiums. In other words, Livia is authorized in those circumstances to give the money that is due to the insurance company to keep a policy in effect.[7]

---

[6] "Responsible" is ordinarily understood to mean "[a]nswerable, accountable, (*to*); liable to be called to account," 2 New Shorter Oxford English Dictionary, p. 2567 (1993 ed.), or "[l]iable to be required to give account, as of . . . the discharge of a duty." American Heritage Dictionary of the English Language, p. 1537 (3d ed. 1992). That is the sense in which we understand the word as it appears in the incorporated settlement.

[7] See American Heritage Dictionary of the English Language, supra at p. 1330 ("pay" means "[t]o give (money) in exchange for goods or services; . . . [t]o discharge or settle (a debt or an obligation)"); 2 New Shorter Oxford English Dictionary, supra at p. 2129 ("pay" means to

But Kurt would continue to be ultimately responsible to her, as well as to the court, for the cost of the insurance. In short, although the divorce decree permits Livia to obtain a "more economical" health insurance policy and to pay the premiums, it also unambiguously provides that Kurt will be responsible for the cost of insurance for as long as he is obligated to pay child support.[8] Consequently, Kurt is necessarily responsible for the insurance premiums even when Livia is the one maintaining and actually paying for the insurance.

Kurt relies on the general rule that, "[b]efore a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the command must therefore be express rather than implied." *Hall v. Nelson*, 282 Ga. 441, 444 (3) (651 SE2d 72) (2007) (citation and punctuation omitted). See also *Morgan v. Morgan*, 288 Ga. 417, 419 (1) (704 SE2d 764) (2011). "However, two major exceptions to this rule already exist. Awards of alimony or child support are implicit commands of the court and are enforceable by action for contempt without language in terms of a command, since these are duties in which society has a substantial interest." *Woods v. Bradford*, 288 Ga. 158, 160 (703 SE2d 319) (2010) (citation and punctuation omitted). See also *Griggers v. Bryant*, 239 Ga. 244, 245-246 (1) (236 SE2d 599) (1977) (applying this principle to awards of child custody). When one party is responsible under a divorce decree for a cost which the other party actually pays, then the responsible party clearly has an implied obligation to reimburse the other party. See *Butler v. Carpenter*, 243 Ga. 734 (256 SE2d 463) (1979) (under decree ordering husband to pay all the children's medical expenses, he was obligated to pay even those bills which were "paid by insurance provided by wife at her own expense"); *Portman v. Karsman*, 166 Ga. App. 398, 400 (304 SE2d 399) (1983) ("the requirement to maintain hospitalization insurance necessarily includes payment of the proceeds to the minor children").

Kurt argues that, even if the medical insurance provisions are not ambiguous, the court below impermissibly modified the divorce

---

"[g]ive . . . money etc. that is due for . . . a service done, or a debt incurred; . . . [h]and over or transfer money in discharge of (a debt, fee, wage, etc.)").

[8] We note that, if Livia were required to bear the cost of insurance upon securing a less expensive policy, she would have little, if any, financial incentive in most circumstances to obtain such a policy, and the provision allowing her that option would essentially be rendered meaningless. "[I]t is axiomatic that whenever possible, a contract should not be construed in a manner that renders any portion of it meaningless." *Schwartz*, 275 Ga. at 109 (2). Under our interpretation of the incorporated settlement, Livia has at least some incentive to obtain a less expensive policy, inasmuch as a lower cost of insurance would be factored into the determination of Kurt's child support obligation in any future modification proceeding.

agreement by requiring Kurt to reimburse Livia for medical insurance premiums, as nothing in the agreement directly imposes any such requirement. But as we have already explained, Kurt is responsible for the cost of such premiums, and ordering him to reimburse Livia for the cost of premiums incurred during the time that he failed to maintain insurance is a reasonable method of compelling him to fulfill his obligation under the divorce decree. See *Roberts v. Roberts*, 229 Ga. 689, 691 (194 SE2d 100) (1972) (husband who had not purchased hospitalization insurance as required by alimony decree became a self-insurer as to wife's hospital indebtedness, and requirement that he pay this indebtedness to purge himself of contempt was a reasonable method of discharging the obligation imposed by the alimony decree). See also *Blair*, 272 Ga. at 96-97 (2) (a party who fails to provide health insurance as ordered "becomes a self-insurer to the extent the medical expenses would have been covered by the ordered policy"). By ordering Kurt to reimburse Livia for the cost of these premiums, the court below did not modify or rewrite the decree, but rather properly allowed Kurt "to purge himself by complying with its terms . . . ." *George v. George*, 232 Ga. 389, 393 (4) (207 SE2d 26) (1974).

3. Kurt also complains that the court below erred when it declined to hold Livia in contempt for taking a gold coin, a silver bowl, and silver place settings that Kurt apparently inherited from his aunt.[9] The record[10] shows that Livia testified that the silver was rightfully hers because it was found in furniture awarded to her and that, in a joint telephone conference, the court stated that it would not find her in contempt for possessing the gold and silver. "The central issue . . . is whether the judgment was sufficiently specific for

---

[9] The court below did find Livia in contempt for failing to foster the relationship between the children and their father and for impeding his visitation rights. Although the court admonished her, it did not order any sanction against her. Kurt has not raised this issue on appeal. But he has raised a question about whether the court below erred when it declined to hold Livia in contempt and to sanction her for failing to comply with various tax provisions of the incorporated settlement. We cannot, however, consider this question, as it has not yet been ruled on. The court below reserved this question for a later hearing, and Kurt did not seek to invoke a ruling before he appealed from the contempt order on the other issues. See *Glean v. State*, 268 Ga. 260, 264 (2) (e) (486 SE2d 172) (1997). See also 4 CJS Appeal and Error § 314 ("Where a ruling on a motion or objection is reserved by the court, the moving or objecting party must subsequently obtain a direct ruling in order to preserve the matter for appellate review."). "We are limited on appeal to those grounds presented to and ruled upon by the trial court and then enumerated as error." *Kohl v. Tirado*, 256 Ga. App. 681, 683 (2) (a) (569 SE2d 576) (2002) (citation and punctuation omitted).

[10] With the parties' consent, the court below entered an order reconstructing the proceedings that occurred on the first day of the hearing, which were not transcribed. Livia's testimony and the court's ruling regarding the gold and silver occurred on that first day and so are set forth in the consent order.

enforcement by contempt as to the items claimed."[11] *Buckley v. Buckley*, 239 Ga. 433, 434 (238 SE2d 238) (1977). An award of a house or furniture does not necessarily include or exclude items contained therein. See id. (award of all furniture to wife did not mean that husband was to receive all items not specifically awarded to wife). See also *Linson v. Crapps*, 204 Ga. 264, 265 (49 SE2d 523) (1948) (household items, but not choses in action, were conveyed by express bequest of contents of home); *Dozier v. Bailey*, 185 Ga. 666 (196 SE 420) (1938) (bequest of $1,000 and everything in bedroom properly construed as not including a note and savings account passbook found in a drawer). Kurt argues that the divorce decree expressly awarded each party the property that he or she inherited. But in fact, the incorporated settlement speaks only to property inherited after August 6, 2007. And there is no evidence that the gold and silver items were inherited after that date. Indeed, the settlement was executed only months later, and Kurt testified that the silver had been in a closet "forever." So, it appears that the gold and silver items about which Kurt complains were not covered by the decree and that the court below correctly declined to go "beyond an interpretation of the decree in an action for contempt" and to determine the ownership of those items. *Buckley*, 239 Ga. at 434.[12]

For these reasons, the contempt order is reversed to the extent that it requires Kurt to execute a quitclaim deed in favor of Livia, but it otherwise is affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunstein, C. J., who concurs in part and dissents in part.*

HUNSTEIN, Chief Justice, concurring in part and dissenting in part.

Although the majority opinion properly affirms the trial court's finding that the husband was in wilful contempt, I cannot agree with its reversal of the trial court's order directing the husband to execute

---

[11] Livia claims that this issue can be resolved by reference to provisions of the incorporated settlement that indicate that all personal property has been divided in accordance with the agreement. But regardless of such provisions, the parties to a divorce decree still "must specifically describe and dispose of property in which both parties have an interest or the decree will not divest either party of their interest in the property. This is true although title to the personal property of each is adjudicated . . . ." *Newborn v. Clay*, 263 Ga. 622, 623 (436 SE2d 654) (1993) (citation and punctuation omitted).

[12] The result is that the decree does not affect the title to the gold and silver items, and Kurt may pursue methods other than contempt to determine ownership of those disputed items. *Buckley*, 239 Ga. at 434. See also *Gonzalez v. Crocket*, 287 Ga. 430 (696 SE2d 623) (2010). If he does so, Livia's argument that he is estopped from denying her title to these items may be considered at that time.

a quitclaim deed to the wife. In this case, the husband lived in the marital residence for 15 months without paying the existing mortgage, and he failed to refinance that mortgage or list the property for sale as required under the couple's divorce decree. Because the majority opinion permits a party with impunity to violate a judgment of the court without losing the benefit of the bargain he made in the divorce settlement, I dissent to Division 1.

DECIDED OCTOBER 1, 2012.

*Banks & Stubbs, Robert S. Stubbs III, Dana A. Azar*, for appellant.

*Simmons & Szczecko, Joseph Szczecko*, for appellee.