303 Ga. 148
FINAL COPY

S17Q1559.  CAHILL v. UNITED STATES.

HUNSTEIN, Justice.

In 1999, Robert A. E. Hall, Jr. purchased property in Roswell, Georgia. In April 2005, after having married Cathleen Mary Cahill, Hall recorded a quitclaim deed that transferred the Roswell property to "Robert A. E. Hall, Jr. and Cathleen M. Cahill as Joint Tenants with Right of Survivorship." Approximately three years later, the couple divorced.  Pursuant to a settlement agreement incorporated into a final judgment and decree of divorce, Cahill was to have "exclusive use and possession" of the Roswell property until she reached the age of 66, at which point the property would be sold and the net proceeds divided equally between the parties; the decree dictated that both Hall and Cahill were to "remain on the title" until the property was sold.  In the following years, Hall failed to pay federal taxes, and, in February 2013, a notice of federal tax lien was filed with the Clerk of Superior Court of Fulton County

against "all property and rights belonging" to Hall.

Cahill turned 66 in February 2015 and resided in the property until her death on April 19, 2015; the property was not listed for sale before her death. The Estate of Mary Cathleen Cahill filed a quiet title action against the United States of America in the United States District Court for the Northern District of Georgia, seeking a determination that the right of survivorship was severed before Cahill's death, thus giving her estate a one-half interest in the property. The Estate argued that the settlement agreement demonstrated an intent to sever the joint tenancy, while the Government argued that the parties' failure to address the issue amounted to an unambiguous retention of the right of survivorship.[1]

The district court concluded that the settlement agreement was ambiguous and determined that "substantial uncertainty" exists as to how Georgia law

---

[1] The parties acknowledge that the Roswell property has been sold during the pendency of this case and that the disputed portion of the proceeds have been placed in escrow. Had this quiet title action been commenced under Georgia law, it would no longer be justiciable. See, e.g., In re Rivermist Homeowners Ass'n., Inc., 244 Ga. 515, 518 (260 SE2d 897) (1979) ("[A] plaintiff [in a quiet title action] must assert that he holds some current record title or current prescriptive title, in order to maintain his suit."). This action, however, was brought under federal law, and we offer no opinion as to whether this action remains viable under that body of law.

applies in this case, asking this Court to address the following question:

> When two people who own a piece of real property as joint tenants with a right of survivorship are divorced pursuant to a decree that purports to resolve all issues as to equitable division of the property between them, grants one party exclusive use and possession of the real property, directs that both parties shall remain on the title until it is sold, and provides that the property shall be placed on the market some seven years in the future with the net proceeds divided equally between the parties but which makes no express reference to severance or retention of the joint tenancy, what is the effect of that divorce decree on the joint tenancy and right of survivorship under Georgia law?

While we agree with the district court that the relevant portion of the divorce decree is ambiguous and that such an issue has never been squarely addressed by this Court, this question can be resolved through the application of well-established principles of contract interpretation.

"From revolutionary times until 1976, the law was that joint tenancy as it existed at common law was abolished in this state." Williams v. Studstill, 251 Ga. 466, 466 (306 SE2d 633) (1983). See also Commerical Banking Co. v. Spurlock, 238 Ga. 123, 124 (231 SE2d 748) (1977). However, "[i]n 1976, the General Assembly provided that a true joint tenancy could exist in Georgia," Williams, 251 Ga. at 466, n. 2 , and, in what would later be codified as OCGA § 44-6-190, provided a word-by-word method of creating a joint tenancy with

right of survivorship; although the statute also provides a method of severing, that method is not exclusive. Here, Hall and Cahill used the requisite language in the April 2005 quitclaim deed to create a joint tenancy with the right of survivorship; the question now is whether that concurrent estate was severed in the subsequent divorce decree. To answer that question, we must look to the final order itself.[2]

At issue here is the following portion of the divorce decree concerning the Roswell property:

> [Cahill] shall continue to have exclusive use and possession of the [property]. Both parties shall remain on the title until its sale.
>
> . . .
>
> The . . . property shall be placed on the market for sale upon [Cahill] reaching Sixty Six (66) years of age, unless mutually agreed otherwise in writing by [the parties]. . . .

---

[2] In 2015, the General Assembly amended OCGA § 44-6-190 to reflect that a joint tenancy may be "disposed of" in a final order of divorce or annulment. See Ga. L. 2015, p. 827, 828 § 1 (now codified at OCGA § 44-6-190 (a) (4)). That provision, which was enacted subsequent to the divorce decree and Cahill's death, has no application to this action. Cf. Williams v. Studstill, 251 Ga. 466, 467 (306 SE2d 633) (1983) (subsequent legislation not applicable to existing deeds and wills). Nevertheless, there is no question here that a divorce decree can properly divide and award marital property, "whether owned in common by the parties to the marriage or as joint tenants with the right of survivorship." Vargo v. Adams, 302 Ga. 637, 639 (805 SE2d 817) (2017).

4

> Upon sale of the [property], any and all proceeds generated from the sale of the residence . . . shall be equally divided between the parties.

As we undertake a construction of this provision, we are reminded "that the usual rules of contract construction are to be utilized in determining the meaning and effect of a settlement agreement incorporated into a decree of divorce." DeRyke v. Teets, 288 Ga 160, 162 (702 SE2d 205) (2010). The controlling principle is to "find the intent of the parties by looking to the 'four corners' of the agreement and in the light of circumstances as they existed at the time the agreement was made." (Quotations and citations omitted.) Doritis v. Doritis, 294 Ga. 421, 424 (754 SE2d 53) (2014). "Where any contractual term of a settlement agreement incorporated into a decree is clear, unambiguous, and capable of only one interpretation as written, the provision's plain meaning must be strictly enforced." Hall v. Day, 273 Ga. 838, 839 840 (546 SE2d 469) (2001). However, where there is ambiguity, we must apply well-settled rules of contract construction. See Howard v. Howard, 302 Ga. 451, 453, n. 2 (807 SE2d 379) (2017).

"Ambiguity is defined as duplicity; indistinctness; an uncertainty of meaning or expression used in a written instrument, and . . . also signifies of

doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations." (Citation and punctuation omitted.) Early v. Kent, 215 Ga. 49, 50 (108 SE2d 708) (1959). See also Horwitz v. Weil, 275 Ga. 467, 468 (569 SE2d 515) (2002) ("Ambiguity in a contract is defined as duplicity, indistinctness or an uncertainty of meaning or expression."). Determining the existence of ambiguity and, if need be, resolving that ambiguity, is the duty of a court; there is no jury question raised unless the ambiguity remains after the application of the pertinent rules of construction. Travelers Ins. Co. v. Blakey, 255 Ga. 699 (342 SE2d 308) (1986). See also Envision Printing, LLC v Evans, 336 Ga. App. 635 (786 SE2d 250) (2016).

Though the divorce decree plainly addresses the use, possession, and eventual sale of the property – as well as the names on the deed to the property – the decree is silent on the question of the survival of the joint tenancy, and we conclude that the provision is, in fact, ambiguous. Thus, we must attempt to give clear meaning to this provision, construing it in the context of the entire agreement, see Archer Wester Contractors, Ltd. v. Estate of Pitts, 292 Ga. 219 (2) (735 SE2d 772) (2012), and giving it a "construction that will uphold the

6

agreement rather than . . . render [it] meaningless and ineffective." McLendon v. Priest, 259 Ga. 59, 60 (376 SE2d 679) (1989). The Government asserts that, in the absence of a manifest intent to dissolve the joint-tenancy, we must conclude that the parties did not intend to sever the joint tenancy. We agree with the Estate, however, that this provision, when read in conjunction with the divorce agreement as a whole, evidences the parties' intent to sever the joint tenancy.

As an initial matter, the divorce decree, in effect, created a new deed when it awarded the property to Cahill for a number of years, cf. Price v. Price, 286 Ga. 753 (1) (692 SE2d 601) (2010), and we are reluctant to infer the retention or creation of a joint tenancy absent express language, see OCGA § 13-2-2 (8). Notably, the settlement agreement states that "[b]oth parties shall remain on the title until its sale." This provision reflects that the parties were cognizant of the April 2005 quitclaim deed, and this language would be superfluous if the plain intent of the parties was to retain the joint tenancy with right of survivorship. Indeed, it is reasonable to conclude that if the parties wished to retain the joint tenancy along with the names on the deed, they would have included such language. Cf. Wallace v. Wallace, 260 Ga. 400, 400 (396 SE2d 208) (1980)

(construing settlement agreement that expressly dictates that both parties remain on the deed *as joint tenants with right of survivorship).*

Moreover, the settlement agreement as a whole was intended to dissolve the parties' marriage and *divide* their property. The agreement reflects that the parties intended to "live apart for the rest of their lives," to be "free from the interference, authority and control, direct or indirect, of the other as fully as if never married to each other," and to waive any "rights or claims each party may now have against the other . . . by reason of the marriage of the parties." Though joint tenancy in Georgia neither requires nor depends on marriage, the joint tenancy *in this case* was executed during the marriage, and the reasonable conclusion is that the parties wished to sever their ties. Any contrary conclusion runs against the plain purpose of the settlement agreement and undermines the parties' clear intent of total separation. Indeed, it is difficult to envision that the parties intended to divorce, sell the property after Cahill turned 66, and divide the proceeds, yet maintain the right-of-survivorship provision so that one party would retain the entire property in fee simple in the event the other party died during the seven years before she turned 66. The settlement agreement "must be read reasonably, in its entirety, and in a way that does not lead to an absurd

8

result." Office Depot, Inc. v. District at Howell Mill, LLC, 309 Ga. App. 525, 530 (710 SE2d 685) (2011).

Accordingly, the divorce decree in this case severed the joint tenancy with right of survivorship created by the April 2005 deed.[3]

Question answered. All the Justices concur, except Melton, P.J., who concurs in judgment only.

---

[3] Even if the joint tenancy were not severed, the divorce decree still requires the parties to split the net proceeds from the sale of the property. The divorce decree is a binding judgment in personam, cf. Hood v. Hood, 138 Ga. 610) (61 SE2d 471) (1906) (1), and was not eclipsed by Cahill's death, see Trammell v. West, 224 Ga. 365 (2) (162 SE2d 353) (1968); OCGA 53-7-6 (3). Other courts have reached the same conclusion. See In re Estate of Gordon, 842 A2d 1270 (I) (Me. 2004) (former wife bound by property award in divorce action notwithstanding death of former husband and a lingering right-of-survivorship provision). We have not been asked to consider the disposition of the proceeds under Georgia law.

9

Decided February 19, 2018.

Certified question from the United States District Court of the Northern District of Georgia.

Frank G. Podesta, for appellant.

Lori M. Beranek, Lisa D. Cooper, Robert J. Branman, Joan I. Oppenheimer, John A. Horn, for appellee.