A09A1876, A09A1877. FRIER v. FRIER; and vice versa.
(692 SE2d 667)

DOYLE, Judge.

This Court granted interlocutory appeals in Case Nos. A09A1876 and A09A1877, wherein Rebecca Futch Frier ("Futch") and Russ Frier, as executor of Futch's ex-husband's estate, each appeal the denial of their cross-motions for summary judgment in Russ's declaratory judgment action filed against Futch. We have consolidated the cases for review, and we affirm the denial of summary judgment to Russ and reverse the denial of summary judgment to Futch.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

Each appeal arises from the same facts, which are not materially in dispute. In August 1997, Thomas H. Frier, Jr., married Futch. In April 2004, Thomas established a 12-month certificate of deposit account, payable to Futch at the time of his death, in the amount of $100,000 ("POD account"). In March 2005, after separating, Thomas and Futch executed a settlement agreement addressing the distribution of their property. The settlement agreement included the following language: "[Futch] and [Thomas] shall have and receive any sums of money [in][2] their respective checking accounts, savings accounts, IRAs, retirement funds or accounts or other properties in their own individual names." In April 2005, after the execution of the settlement agreement but before the divorce was

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).
[2] At the summary judgment hearing, both counsel agreed that the word "in" was unintentionally omitted from this sentence.

final, the POD account matured, and Thomas renegotiated a 12-month renewal at a higher interest rate. For reasons unknown, Thomas did not change the beneficiary of the POD account. In May 2005, the superior court entered a final divorce decree which incorporated the settlement agreement. In January 2006, Thomas died.

Russ, as executor of his father's estate, filed a declaratory judgment action against Futch seeking clarity on the ownership of the POD account, which designated Futch as the death beneficiary.[3] Both parties moved for summary judgment, and the trial court denied both motions, certifying its rulings for immediate review. This Court granted the parties' applications for interlocutory appeal.

Russ contends that the settlement agreement altered Futch's rights as a POD payee.

> The meaning of a settlement agreement incorporated into a divorce decree is determined according to the usual rules of contract construction, and the cardinal rule thereof is to determine the intent of the parties. Construction of a contract by the court involves three steps. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. Secondly, if ambiguity does appear, the existence or nonexistence of an ambiguity is a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.[4]

As noted above, the relevant language of the settlement agreement is as follows: "[Futch] and [Thomas] shall have and receive any sums of money [in] their respective checking accounts, savings accounts, IRAs, retirement funds or accounts or other properties in their own individual names." We discern no ambiguity in this language. "Ambiguity in a contract is defined as duplicity, indistinctness[,] or an uncertainty of meaning or expression."[5] Giving effect to the plain meaning of the language in the settlement agreement,[6] we

---

[3] The suit also named the bank as a defendant, but the bank interpled the funds into the superior court and is no longer a party to the suit.

[4] (Punctuation and footnote omitted.) *Young v. Stump*, 294 Ga. App. 351, 352 (1) (669 SE2d 148) (2008). See also *Hortman v. Childress*, 162 Ga. App. 536 (292 SE2d 200) (1982).

[5] (Punctuation omitted.) *Young*, 294 Ga. App. at 352 (1).

[6] See, e.g., *Continental Cas. Co. v. HSI Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996) (plain meaning of all contract terms must be given full effect). See also OCGA § 13-2-2

YALE LAW LIBRARY

conclude that at the time the divorce became final, Futch relinquished the interest she may have had in the account by virtue of her marriage to Thomas. However, the question then becomes whether the language in the settlement agreement was sufficiently broad to accomplish a waiver of Futch's right to payment from the POD account as the death beneficiary specified by Thomas when he created the account and so remaining on the day he died. We conclude that it did not.

Despite Russ's assertion to the contrary, we find the settlement agreement language to be distinct from that in *Kruse v. Todd*,[7] which addressed an ex-wife's interest in her deceased ex-husband's IRA naming her as the death beneficiary. In *Kruse*, the parties had executed a settlement agreement providing that "any IRA[ ] wherever located presently [is] the sole and exclusive property of the designated *depositor* or named owner or recipient, *and the other party shall have no interest therein*."[8] This language was held to clearly constitute a waiver of the ex-wife's interest as a death beneficiary of the IRA, because it reflected the wife's waiver of her expectancy interest in the account.

Here, by contrast, the settlement agreement merely states that the parties will have and receive any sums of money "in their own individual names," and it does not contain an explicit waiver of any party's interest, as in *Kruse*.[9] Therefore, although Futch had no interest in the account by virtue of her marriage, Futch's expectancy interest (if any) as a death beneficiary was not waived. Further, the agreement here did not explicitly require that the account shall remain the sole and exclusive property of the *depositor*, as in *Kruse*. The POD account was in Thomas's name, payable on death to Futch. Nothing in the language of their settlement agreement changed the POD status of that account. During Thomas's lifetime, he was entitled to exhaust the POD account and to change or delete the POD beneficiary. Since Thomas failed to change the POD status, Futch remained the POD beneficiary, and the account was payable to Futch upon Thomas's death.[10]

Having encountered no ambiguity in the language of the settle-

---

(1) ("Parol evidence is inadmissible to add to, take from, or vary a written contract."); *Speed v. Muhanna*, 274 Ga. App. 899, 905 (2) (b) (619 SE2d 324) (2005).

[7] 260 Ga. 63 (389 SE2d 488) (1990).

[8] (Punctuation omitted; emphasis supplied.) Id. at 69 (5).

[9] Compare also *Young*, 294 Ga. App. at 351-353 (1) (ex-wife's beneficiary interest in IRA account waived where agreement stated that "Wife shall make no claim to or against any such account and herewith specifically waives and relinquishes any and all claims which she may have to same") (punctuation omitted).

[10] See OCGA § 7-1-818. See also, e.g., *Maccabees Mut. Life Ins. Co. v. Morton*, 941 F2d 1181, 1184-1185 (III) (11th Cir. 1991).

ment agreement, and having ruled that the agreement did not constitute a waiver of Futch's interest as POD beneficiary, we conclude that the trial court erred in denying Futch's motion for summary judgment. Thus, we reverse the denial of summary judgment to Futch in Case No. A09A1876, and we affirm the denial of summary judgment to Russ in Case No. A09A1877.

*Judgment reversed in Case No. A09A1876. Judgment affirmed in Case No. A09A1877. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 25, 2010 —
RECONSIDERATION DENIED MARCH 23, 2010 —

*Preston & Preston, William W. Preston,* for appellant.
*James D. Hudson,* for appellee.