**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 24, 2015**

# In the Court of Appeals of Georgia

A14A2265. LOWRY v. FENZEL.

McMILLIAN, Judge.

Heather E. Lowry, as administratrix for the estate of William B. Lowry ("Lowry"), appeals from the trial court's grant of summary judgment to defendant Roberta K. Fenzel f/k/a Roberta K. Lowry ("Fenzel"), directing that Fenzel has the right to funds held in various accounts upon the death of her ex-husband, William B. Lowry ("decedent"). Lowry also asserts as error the trial court's failure to grant her motion to strike the affidavit of a witness submitted by Fenzel in support of her motion for summary judgment. For the reasons that follow, we affirm in part and reverse in part.

"Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56

(c) have been met." (Citations and punctuation omitted.) *Rollins v. Rollins*, 329 Ga. App. 768, 772 (3) (a) (766 SE2d 162) (2014). And in our de novo review of the grant of a motion for summary judgment, we view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant. Id.

The relevant facts are largely undisputed. Fenzel and decedent were married on May 6, 1995. On October 1, 2008, Fenzel and decedent executed a "Settlement Agreement" that was incorporated into the "Final Judgment and Decree of Divorce" entered by the Superior Court of Cobb County on October 9, 2008. Decedent died intestate on March 14, 2011, and Lowry, his niece, was appointed the administratrix of his estate. At the time of his death, decedent held several checking and investment accounts with various financial institutions as follows:

1. Ameriprise Financial Services, Inc. brokerage account in the amount of $225,116.49 ("Ameriprise");

2. Atlanta Postal Credit Union draft checking account and certificates of deposit totaling $174,424.34 ("APCU");

3. GEMC Federal Credit Union checking account in the amount of $51,734.98 ("GEMC"); and

4. LGE Community Credit Union checking account containing

$27,388.57 ("LGE").

The Ameriprise account and three of the certificates of deposit held with APCU – with a subtotal of $60,525.84 – were held solely in decedent's name with Fenzel listed as the beneficiary or transfer-on-death recipient. All other accounts were held jointly in decedent and Fenzel's names. Fenzel admits that she accepted transfer of all funds from the Ameriprise, APCU, and GEMC accounts.

On November 1, 2012, LGE filed an interpleader action in the Superior Court of Cobb County, naming both Lowry and Fenzel as defendants and alleging that Lowry had presented a demand for payment of the funds on deposit in decedent's account and that Fenzel is listed as the joint owner of the account. On December 4, 2012, Lowry filed suit against Fenzel in Fulton County on behalf of decedent's estate to recover all funds from the Ameriprise, APCU, and GEMC accounts after Fenzel refused to return those funds to decedent's estate.[1] On March 11, 2013, the Cobb County action was transferred to Fulton County where LGE was dismissed as a party

---

[1] Lowry also asserted claims with respect to two life insurance policies in which Fenzel was identified as the beneficiary, but later conceded that the estate had no claim to those policies because Terry Hopkins, a friend of decedent, was listed as the successor beneficiary.

3

following deposit of the interpleader funds into the court registry, and Lowry was realigned as the plaintiff. The case was then reassigned to the judge who had been assigned to the December 2012 action filed by Lowry. The trial court subsequently granted the parties' motion to consolidate the two actions into one case.[2] Following discovery, Fenzel filed a motion for summary judgment, which the trial court granted after a hearing. This appeal followed.

1. In her first and second enumerations of error, Lowry asserts that the trial court erred in granting summary judgment to Fenzel as to the accounts held solely in decedent's name, with Fenzel listed as a beneficiary. It is undisputed that decedent never completed any change of beneficiary forms or removed Fenzel's name from the accounts. Rather, Lowry argues that Fenzel waived her interest in any such accounts through the Settlement Agreement entered into by Fenzel and decedent, pointing specifically to Paragraphs 3 and 8. Paragraph 3 is entitled "PERSONAL PROPERTY (GENERAL)" and provides, in toto:

---

[2] Fenzel argues that the two cases should be treated separately for certain purposes, including on appeal. However, although Fenzel continued to treat the two cases separately below, it is unclear from the record that the trial court intended anything other than to consolidate the two cases into one as urged by both parties below. Thus, we will review the trial court's grant of summary judgment on all claims in this appeal. See *Thomas v. Brown*, 308 Ga. App. 514, 514-515 (1) (707 SE2d 900) (2011).

4

All items of personal property of every kind, nature and description, and wherever located, currently in the possession of the respective parties, in addition to all transfers herein provided, shall, upon the signing of this Agreement, be the sole and exclusive property of that party. Each shall own and enjoy this property independently free and clear of all claims or rights of the other; however, in the event a provision below provides for the later transfer of any personal property, that provision shall control.

And Paragraph 8, entitled "PERSONAL PROPERTY (SPECIFIC)," includes a specific list of household and personal items to be given to Fenzel and the manner in which she may retrieve those items. Paragraph 8 also states that

[e]xcept as may otherwise be stated in this Agreement, each party shall be entitled to any and all bank accounts, money accounts, investment accounts, including stock portfolios, in that party's name and the other party shall make no claim whatsoever, legal, equitable, or otherwise, to same.

"Settlement agreements in divorce cases must be construed in the same manner and under the same rules as all other contractual agreements." *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) (561 SE2d 96) (2002). And, "[c]onstruction of a contract by the court involves three steps. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of

5

construction." (Citations omitted.) *Frier v. Frier*, 303 Ga. App. 20, 21 (692 SE2d 667) (2010). Then, if ambiguity does appear, the existence or nonexistence of an ambiguity is a question of law for the court. Id. Thus, "a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction." Id.

We discern no ambiguity in the language of the Settlement Agreement here. "Ambiguity in a contract is defined as duplicity, indistinctness, or an uncertainty of meaning or expression." (Citation and punctuation omitted.) *Frier*, 303 Ga. App. at 21. As an initial matter, Paragraph 3 of the Settlement Agreement provides for the division of personal property in the possession of the parties at the time of the agreement and does not apply to the financial accounts at issue here. Rather, the more specific language of Paragraph 8 governs the division of the parties' accounts. See *Holland v. Holland*, 287 Ga. 866, 868 (1) (700 SE2d 573) (2010) ("In construing contracts, a specific provision will prevail over a general one.").

Fenzel concedes that Paragraph 8 extinguished any claims she may have had to the accounts held solely in decedent's name that arose by virtue of their marriage. However, she argues that her beneficiary interest in those accounts is not by virtue of her marriage to decedent, but rather through the contractual agreements between

6

decedent and the financial institutions and that she did not waive her expectancy interest in those accounts. Lowry contends, however, that the language of Paragraph 8 is broad enough to waive Fenzel's right to payment as a beneficiary, pointing us to two cases that addressed similar waiver language.[3] We agree and find that Fenzel waived her expectancy interest as a beneficiary to the accounts held in decedent's name.

*Kruse v. Todd*, 260 Ga. 63 (389 SE2d 488) (1990), is particularly instructive. In that case, the administratrix of the decedent's estate and the decedent's ex-wife both claimed an interest in a life insurance policy and an IRA in which the ex-wife remained the designated beneficiary at the time of the decedent's death. The divorce settlement agreement provided in part:

---

[3] A third case cited by Lowry is instructive but factually distinguishable. In *Barnett v. Platz*, the parties twice married and divorced. 261 Ga. App. 51 (581 SE2d 682) (2003). According to the terms of the first divorce settlement agreement, if the husband sold the marital residence, remarried, or died, the wife would receive half of the home's equity. The second agreement, however, provided that "the parties shall and do mutually remise, release, and forever discharge each other from any and all actions, suits, debts, claims, demands and any and all obligations whatsoever against each other" and that "'each party hereby waives any past, present or future claim or right which he may have against the other party.'" Id. at 52. This Court found that the release included the husband's contingent obligation to give the wife half the home's equity. Id.

7

Any stocks, bonds, IRA's or any other monies wherever located presently is (sic) the sole and exclusive property of the designated depositor or named owner or recipient, and the other party shall have no interest therein.

Except as otherwise expressly provided, the parties shall and do mutually remise, release, and forever discharge each other from any and all actions, suits, claims, demands, and obligations, whatsoever, both in law and in equity, which each of them ever had, now has, or may hereafter have against the other upon or by reason of any matter, cause, or thing up to the date of the execution of this Agreement.

(Punctuation omitted.) Id. at 65. The Supreme Court held that the agreement expressed no intent that the wife release her expectancy interest as a beneficiary of the husband's life insurance policy, finding that "up to the date of the execution" the wife had no claim or right against the husband to be named beneficiary of his life insurance policy and he was under no legal or equitable obligation to maintain the wife as beneficiary. Id. at 67 (1). Thus, any rights the wife had to the proceeds arose after the husband's death, and any claim to the proceeds was against the life insurance company and not against the husband. Id.

However, in addressing the wife's claim to an IRA account, on which she also remained the beneficiary at the time of the husband's death, the Court found that the

8

language clearly and unambiguously expressed the parties' intent that the wife release any interest in any IRA of which the husband was the designated depositor and was sufficiently broad to include her expectancy interest in the IRA. Id. at 69-70 (5).

And in another similar case, *Young v. Stump*, 294 Ga. App. 351, 353 (669 SE2d 148) (2008), the executrix of the decedent's estate and the decedent's ex-wife both claimed an interest in an IRA in which the ex-wife remained the designated beneficiary at the time of decedent's death. The divorce settlement agreement in that case provided:

> Husband shall have all right, title and equity in and to any retirement account which is presently titled in his name, or which was established for his benefit, including, but not limited to IRAs. Wife shall make no claim to or against any such account and herewith specifically waives and relinquishes any and all claims which she may have to same.

(Punctuation omitted.) Id. at 351. This Court found the language showed that the wife intended to disclaim any and all interest in the husband's retirement accounts and operated as a waiver of her beneficiary designation. Id. at 353 (1).

We are unpersuaded by Fenzel's attempt to distinguish these cases.[4] She argues that the Settlement Agreement does not cover any beneficiary interests arising outside of the marriage and that her claims to these funds arise from the contracts with the financial institutions. In support of her argument, Fenzel points to Paragraph 5 of the Settlement Agreement, asserting that it makes clear that the Agreement only governs

---

[4] Nor are we persuaded by Fenzel's reliance on *Frier*, in which the husband died following the couple's divorce, having left his ex-wife as the beneficiary to a certificate of deposit account. 303 Ga. App. 20. The settlement agreement in that case provided that the parties "shall have and receive any sums of money in their respective checking accounts, savings accounts, IRAs, retirement funds or accounts or other properties in their own individual names." (Punctuation and footnote omitted.) Id. at 20. In finding the wife had not waived her expectancy interest (if any) as a death beneficiary, this Court noted that – unlike in the case at bar – the parties' agreement did not contain an explicit waiver of any party's interest. Id. at 22.

"matters arising out of the divorce."[5] However, the settlement agreement in *Kruse*

also included a similar clause:

> Except for those rights and claims for which this Agreement provides,
> and except for the provisions of any valid Last Will and Testament of
> the other, each party hereby waives and releases his or her respective
> rights and claims *against the other* or the estate of the other including
> but not limited to, alimony, division of property, curtesy, year's support,
> and any rights or claims he or she may have against the other or the
> estate of the other *by reason of the marriage* of the parties.

(Punctuation omitted; emphasis supplied.) *Kruse*, 260 Ga. at 65-66. Notwithstanding

that clause, the Supreme Court held the agreement's waiver language clearly

---

[5] Paragraph 5, entitled "FINAL SETTLEMENT," provides:

> The parties acknowledge that the provisions of this Agreement for the
> payment of funds and disposition of assets, transfer of title to assets and
> all other matters pertaining to the division of assets were arrived at
> through negotiations and that this Agreement constitutes a complete and
> final settlement, accord and satisfaction and release of each party to and
> of the other, for any and all claims which either may have against the
> other for any matters arising out of the divorce. This Agreement is
> acknowledged by each party to be sufficient satisfaction and settlement
> of all claims of each party against the other.

11

expressed the intent of the parties and was sufficiently broad to include the wife's expectancy interest in the IRA. Id. at 69-70 (5). We reach the same result here and hold that the language in the Settlement Agreement providing that "each party shall be entitled to *any and all* bank accounts, money accounts, investment accounts, including stock portfolios, *in that party's name* and the other party shall make *no claim* whatsoever, legal, equitable, or otherwise, *to same*" is unambiguous in expressing Fenzel and decedent's intent that the Ameriprise and APCU accounts held solely in decedent's name would remain the personal property of decedent and that Fenzel waived any claim to those accounts, including any expectancy interest therein.[6] (Emphasis supplied). Accordingly, the trial court erred in granting summary judgment to Fenzel as to the Ameriprise and APCU accounts that were held in decedent's name.

2. In her third and fourth enumerations of error, Lowry contends that the trial court erred in granting summary judgment to Fenzel as to the accounts that were jointly held by Fenzel and decedent. As explained in Division 1, Paragraph 8 governs the division of the parties' financial accounts. However, it merely states that each

---

[6] As in *Kruse*, we note the record shows that Fenzel was aware of the existence of the Ameriprise and the APCU accounts before the Settlement Agreement was executed. See *Kruse*, 260 Ga. at 70.

party shall be entitled to all such accounts *in that party's name*. Nowhere does the Settlement Agreement address accounts that were jointly held by the parties. Thus, "[t]he agreement is not ambiguous; rather, it completely fails to describe and dispose of the property" at issue. *Newborn v. Clay*, 263 Ga. 622, 623 (436 SE2d 654) (1993) ("agreement is not ambiguous simply because it fails to dispose of or make reference to the disposition of property in which both parties have an interest"). And where title to property is not described in the divorce decree, it is unaffected by the decree and remains titled in the name of the owner. Id. at 623-624. See also *Gonzalez v. Crocket*, 287 Ga. 430, 432 (696 SE2d 623) (2010) ("a divorce decree must specifically describe and dispose of property in which both parties have an interest or the decree will not divest either party of their interest in the property") (citation omitted).

And under Georgia law, "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created. OCGA § 7-1-813 (a)." (Punctuation omitted.) *Trust Co. Bank v. Thornton*, 204 Ga. App. 903, 904 (1) (420 SE2d 817) (1992). See also OCGA § 7-1-815 ("Any transfers resulting from the application of [OCGA 7-1-813] are effective

by reason of the account contracts involved in this article and are not to be considered testamentary.").

Lowry urges us, however, to find that the joint accounts were included within the property settlement as defined by Paragraph 13 of the Settlement Agreement:

> In consideration of any and all claims, actions, and demands that the Plaintiff may otherwise have against the Defendant, as a result of the parties' marriage, and the property accumulated therein, and in order to equitably divide said marital property, the [husband] shall pay to the [wife] the total sum of $186,000.00 as a complete and final satisfaction of same. . . .

But, by its express terms, Paragraph 13 applies to the settlement of all claims arising from the parties' marriage and includes no explicit waiver of any additional interest either party may have arising outside of the marriage. Because Fenzel did not specifically waive her interest in the joint accounts, the funds remaining therein upon decedent's death were transferred to her according to the account contracts. See *Frier*, 303 Ga. App. at 22 ("although [wife] had no interest in the account by virtue of her marriage, [wife's] expectancy interest (if any) as a death beneficiary was not waived"). See also *Floyd v. Floyd*, 291 Ga. 605, 612, n. 12 (732 SE2d 258) (2012) (divorce decree did not affect title of gold and silver items not sufficiently described

14

therein). Therefore, the trial court did not err in granting summary judgment to Fenzel as to Lowry's claims regarding those accounts held jointly in both decedent and Fenzel's names.

3. In her final enumeration of error, Lowry asserts that the trial court erred by failing to grant her motion to strike the affidavit of Terry Hopkins, which was submitted by Fenzel in support of her motion for summary judgment. However, she failed to support her enumeration with any briefing, much less citation to authority, and it is deemed abandoned. See Court of Appeals Rule 25 (c) (2). Moreover, there is nothing in the record to indicate that the trial court issued a ruling either granting or denying her motion to strike. And, "[i]ssues which have not been ruled on by the trial court may not be raised on appeal." (Citation and punctuation omitted.) *Forum Group at Moran Lake Nursing and Rehabilitation Center, LLC v. Terhune*, 318 Ga. App. 281, 289 (8) (733 SE2d 808) (2012).

*Judgment affirmed in part and reversed in part. Phipps, C. J., and Ellington, P. J., concur*.