**FOURTH DIVISION**
**REESE, P.J.,**
**MARKLE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**April 13, 2021**

# In the Court of Appeals of Georgia

A21A0122. BROWN v. BROWN.

PHIPPS, Senior Appellate Judge.

Pamela Gadams Brown (the "mother") appeals from the trial court's order denying her request for declaratory judgment and awarding Brent Murdock Brown (the "father") attorney fees under both OCGA §§ 9-15-14 and 19-9-3 (g).[1] Because the trial court erred in denying the mother's request for declaratory judgment, we reverse the trial court's order in that regard, and we reverse the trial court's award of OCGA § 9-15-14 (b) attorney fees based on the mother's pursuit of the declaratory judgment action. We further find that the trial court erred in its award of attorney fees

---

[1] The mother initially filed an application for discretionary appeal, which this Court granted. See *Brown v. Brown*, Case No. A20D0439 (granted Aug. 3, 2020).

under OCGA § 19-9-3 (g), and we vacate that award and remand the case for the court to re-consider its attorney fee award under that statute.

The record shows that the mother and the father were previously married and have two children together, who were born in 2008 and 2011. The parties divorced in 2015 pursuant to a final judgment and decree of divorce. The divorce decree awarded joint legal and physical custody of the children to the parties, and provided that they would share parenting time under a parenting plan, which was incorporated into the decree. The parenting plan included a provision for "SUMMER VACATION WEEKS" which stated:

> Each parent shall be entitled to two consecutive weeks of uninterrupted parenting time with the minor children during the children's summer vacation from school. Father shall have the first choice of dates for his summer vacation with the children in all odd-numbered years, with Mother having the first choice of dates in all even-numbered years. The party with the first choice of dates shall notify the other party of his or her selection of dates by April 1st of each year, while the party with the second choice of dates shall notify the other party of his or her selection of dates by April 15th of each year.

The mother admits that the parties – by mutual agreement – deviated from the parenting plan by taking non-consecutive summer time from 2015 through 2018. However, in early 2019, the mother told the father that she intended to take the

children on a summer trip to Africa and requested that he select his two weeks pursuant to the parenting plan for planning purposes. When the parties could not resolve the issue, the mother filed a "petition for modification of child custody and visitation[,] and motion for declaratory judgment."[2] Regarding the motion for declaratory judgment, the mother asserted that in 2017, the last time the father selected his summer vacation weeks before her under the parenting plan, he selected six separate or non-consecutive days throughout the summer, which was inconsistent with the parenting plan directive for each party to select two consecutive weeks of uninterrupted parenting time. The mother requested that the trial court (a) "admonish Father that he must pick weeks, not days, which is consistent with the spirit and language of the Parenting Plan," and (b) "interpret and emphasize that the Summer Vacation Weeks of the Parenting Plan be taken in weekly increments, not daily increments." The mother also requested attorney fees.

The father filed an answer opposing all of the mother's requests for relief. In response to the mother's motion for declaratory judgment, the father asserted that the parenting plan offers the parties "two consecutive weeks" with the children during

---

[2] The mother subsequently withdrew her request to modify the custody provisions of the divorce decree.

3

the summer without any further definition of how those weeks are allocated or exercised, which was demonstrated by the fact that the parties had never exercised two "consecutive" weeks. The father counterclaimed for attorney fees and litigation expenses pursuant to OCGA §§ 9-15-14 and 19-9-3, asserting that while he had made efforts to resolve the issue with the mother, she had engaged in abusive litigation tactics, pursued unreasonable positions in litigation, and refused to participate in cooperative co-parenting efforts and settlement discussions.

The mother filed a request for emergency relief seeking a temporary modification of summer visitation to enable her to take the children on the trip to Africa, but the trial court denied the motion. The May 16, 2019 order, which was prepared by the father's attorney, specifically noted that the summer vacation provision of the parenting plan was "currently in dispute."

On April 29, 2020, the trial court held a final hearing on the mother's request for declaratory judgment. At the hearing, the mother's counsel stated that she would be introducing evidence regarding the declaratory judgment, to which the court responded, "[m]y understanding is that [the father is] not opposing that. Essentially consent to it? Isn't that right[?]" The mother's counsel agreed, but stated that she was

4

going to put up evidence "to show the judge what the issue is with the declaratory judgment[,]" in defense of the father's request for attorney fees, and in support of the mother's request for attorney fees.

According to the mother, although the father said that he did not dispute the language of the parenting plan, his actions showed otherwise, and she still needed the trial court to rule on her declaratory judgment action and clarify that the summer vacation weeks parenting plan language required the parties to select two consecutive, uninterrupted weeks during the summer. The mother testified that she sought declaratory judgment because she was unable to plan summer trips because the father was not being flexible; he believed that he did not have to take two consecutive summer weeks, and he wanted the children to participate in swimming for five weeks every summer. The mother told the trial court, "I'm really afraid to be flexible and do the weeks part because we will walk away, and this will happen again, and I think we are both really tired of litigation. . . . I was flexible before, a week here and a week there, but I think that we need to follow the letter of the law."

The father and his counsel asserted that they did not contest the parenting plan language, had told the mother repeatedly that they did not contest the language, and yet the mother still pursued her action. The father's counsel specifically stated, "[w]e

5

are not contesting what the parenting plan says. It says two consecutive weeks." However, both the father and his counsel argued that the parties had never followed the parenting plan language until the mother filed her declaratory judgment action. And, the father repeatedly testified that he selected his summer dates so the children could participate in swimming and other activities.

Evidence presented at the hearing showed that in March 2017, after the father selected six separate days throughout the summer and stated that he would select his remaining eight days after the mother selected her days, the mother insisted that the "summer vacation weeks" provision of the parenting plan required the parties to select two weeks of consecutive time with the children; the plan did not allow the parties to choose random days. She requested that the father "please pick your weeks, and I will still take July 22nd-29th and then after you pick your two weeks, I will pick another." The father replied that he disagreed with the mother's view of the plan, and he would not change his selections.[3] On April 9, 2018, the father sent an email to the mother stating that he had not received the mother's summer dates, which had been due on April 1, and selecting six separate summer days and a week in early August.

---

[3] The father's email reads: "It does not state that it states we can have two consecutive weeks don't like it file a complaint otherwise I'm not changing the thing[.]"

The father's counsel noted in a February 2019 letter that the father would agree to language that the summer parenting plan must be exercised in seven-day periods if the mother agreed to remove language from the plan that the father could not schedule extracurricular activities during her parenting time. In March 2019, the father notified the mother that he was selecting three days in May, four days in July, and a week in August. The mother's counsel informed the father's counsel that the father's selections were "NOT acceptable" under the parenting plan, and requested that the father select two consecutive weeks of summer parenting time. The father's counsel replied: "We disagree with your interpretation of the summer schedule outlined in the Parenting Plan, as the parties have never exercise[d] two consecutive weeks in a row with the children." The email noted once again that although the father did not agree with the mother's interpretation of the Parenting Plan, he would select a seven consecutive day period if the mother agreed to allow the children to participate in swim meets.

In April 2019, the mother sent the father an email in which she offered July 22-August 5 or July 5-18 as her two consecutive summer weeks with the children. The mother's attorney also sent a letter attempting to settle the issues, but the parties could not agree on terms. In fact, the father was only willing to agree that the summer

7

vacation weeks would be exercised in seven-day periods. The father's attorney sent a letter proposing that each party have an additional week of summer vacation, raising each party's uninterrupted summer weeks from two weeks to three weeks, and that each party could exercise two of the weeks consecutively. The letter further stated that the father was willing to let the mother have first choice of weeks every summer as long as the mother agreed that the children could participate with the father in the five swim meets during the summer.

On August 27, 2019, the mother's counsel sent the father's counsel an email stating that, according to the mother, the parties "have agreed to cancel today's mediation and that everyone is going to dismiss their actions and kick the can down the road. Please confirm[.]" The father's counsel responded that the father agreed to forego mediation, but he reserved his right to request attorney fees. To which the mother's counsel replied that if the father was reserving his request for attorney fees, then so was the mother, and she wanted to be heard on her request for declaratory judgment regarding summer vacation weeks.

On October 1, 2019, the mother's counsel sent the father's counsel an email stating that it was counsel's "understanding that [the parties] want to mutually

dismiss. Please confirm." On October 2, 2019, the father's counsel responded that the father was forced to spend nearly $25,000 on an "emergency issue" that was denied by the court and still wanted to pursue attorney fees. As for the mother's intention to pursue declaratory judgment, the letter stated,

> We are not disputing the Parenting Plan says what it says. [The father's] only issue is that neither party has ever requested 2 consecutive weeks during the summer, but that's irrelevant to your request for declaratory judgment. You can certainly move forward on the Motion for Declaratory Judgment, but we are not contesting it.

The letter also indicated that the father would dismiss his counterclaim in exchange for $15,000 in attorney fees. The father, however, subsequently withdrew his offer of settlement.

On April 9, 2020, the father's counsel sent a letter to the mother's counsel reiterating that the father was not disputing the declaratory judgment:

> As I told you in August of 2019, [the father] is not disputing the language of the parenting plan. There is no need for declaratory relief on that subject; yet [the mother] has not withdrawn her petition. . . . Frankly, we are confused as to why [the mother] is proceeding with this case and what she hopes to accomplish. . . . We are happy to enter into a consent order on the declaratory judgment issue to reduce costs.

However, on April 15, 2020, the father sent an email to the mother selecting his summer dates: (a) July 27-August 4 if camp is cancelled; or (b) July 22 and July 23

if camp is NOT cancelled. In an April 21, 2020 letter from the mother's counsel to the father's counsel, the mother stated that she had waited to respond to the father's letter

> in hope that the issues would be resolved at mediation and to see if [the father] would select two consecutive weeks for this summer by his April 15th deadline. He did not, leading me to believe he still does not understand and disputes the clear meaning of the Parenting Plan. Despite your claim that you conceded the declaratory judgment/Parenting Plan language issue for the first time on October 2nd, it is obvious to me that there is still a dispute.

Following the hearing, the trial court issued an order (a) denying the mother's request for declaratory judgment, and (b) awarding the father attorney fees pursuant to OCGA §§ 9-15-14 (b) and 19-9-3 (g). In denying the mother's request for declaratory judgment, the court concluded that

> [t]he Parenting Plan permits each party "up to"[4] two (2) consecutive weeks of parenting time with the children during the summer, but there is no requirement that each party exercise two (2) full consecutive and uninterrupted weeks of summer parenting time. Further, there is no requirement in the Parenting Plan that either party must select his or her summer parenting time in weeks, rather than days. Petitioner testified at the final hearing that she wanted the declaratory judgment to state that each party is required to select his or her summer weeks in two (2) week

---

[4] While the trial court quoted the words "up to" as if they are in the text of the parenting plan, these words are not in the plan. The plan indicates that "[e]ach parent shall be entitled to two consecutive weeks of uninterrupted parenting time with the minor children during the children's summer vacation from school."

10

consecutive and uninterrupted blocks, which is not required by the Parenting Plan and thus not something the Court can therefore order as a declaratory judgment. Accordingly, [the mother's] request for declaratory judgment is DENIED.

The mother appeals this ruling.

1. The mother contends that the trial court erred in denying her motion for declaratory judgment. Specifically, she argues that the trial court's interpretation of the parenting plan "summer vacation weeks" language not only contradicts the plain language of the parenting plan and effectuates a modification of the plan, but potentially strips the parent selecting second of her right to two consecutive weeks depending on the days selected by the parent choosing first. We agree.

> The State Declaratory Judgment Act gives superior courts the power to declare rights and other legal relations of any interested party in "cases of actual controversy" under OCGA § 9-4-2 (a) and "in any civil case in which it appears to the court that the ends of justice require that the declaration should be made." OCGA § 9-4-2 (b).

*Walker v. Owens*, 298 Ga. 516, 518 (783 SE2d 114) (2016) (citation omitted). The Act is designed "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" OCGA § 9-4-1.

> The proper scope of declaratory judgment is to adjudge those rights among parties upon which their future conduct depends. Such relief is authorized when there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from

11

uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.

*Walker*, 298 Ga. at 518-519 (citations and punctuation omitted). See *Weaver v. Jones*, 260 Ga. 493, 493 (1) (396 SE2d 890) (1990) ("A declaratory judgment is an appropriate means of ascertaining one's rights and duties under a contract and decree of divorce.") (citation and punctuation omitted). "An action for a declaratory judgment . . . may be used to clarify the meaning or application of a previously existing court order." *Merchant Law Firm, P.C. v. Emerson*, 301 Ga. 609, 616 (2) (b) (800 SE2d 557) (2017) (citation and punctuation omitted).

"A trial court's findings of fact after a declaratory judgment hearing are analogous to a jury verdict and will not be interfered with if there is any evidence to support them. However, we review the trial court's conclusions of law de novo." *Strange v. Towns*, 330 Ga. App. 876, 876 (769 SE2d 604) (2015) (citation and punctuation omitted).

Here, the mother sought a declaratory judgment ruling that the "summer vacation weeks" parenting plan language required the father to select consecutive weeks, not daily increments, for his summer vacation parenting time. The father argues that a declaratory judgment was not a proper remedy in this case because no

12

actual controversy existed. According to the father, the language of the parenting plan was not in dispute – "it says what it says." However, as detailed above, the father initially contended that the language in the "summer vacation weeks" provision did not require him to select his summer visitation in a consecutive two-week block, but, rather, it permitted him to select up to 14 random days during the summer. Although the father later agreed with the mother's interpretation of the "summer vacation weeks" language requiring him to select two consecutive weeks and repeatedly indicated he did not contest the mother's motion for declaratory judgment, even after that concession, the father selected nine days or two days (depending on whether camp was cancelled) rather than a two-week, consecutive, uninterrupted block for the summer of 2020. He also continued to emphasize to the trial court the fact that the mother had not always selected consecutive weeks during the summer.

In light of the father's actions demonstrating that he did not agree with the mother's interpretation of the "summer vacation weeks" language in the parenting plan, an actual controversy existed, and the mother was entitled to seek a declaratory judgment to ascertain her rights under the divorce decree and the "summer vacation weeks" provision of the parenting plan incorporated in that decree. *Hardman v. Hardman*, 295 Ga. 732, 736 (3) (a) (763 SE2d 861) (2014).

In addition, the trial court's ultimate conclusion that the "summer vacation weeks" provision requires something completely different than what the mother asserted (and the father claimed not to contest) is evidence that the mother's action presented a justiciable controversy. Despite the father's admission that he did not contest the mother's motion for declaratory judgment, the trial court denied the mother's motion and ruled that the parenting plan language permits each party to select "up to" two consecutive weeks of parenting time with the children during the summer, with no obligation that a parent select parenting time in weeks rather than days. We conclude that the trial court erroneously interpreted the plain and unambiguous language of the "summer vacation weeks" provision in the parenting plan.

> The meaning of [an agreement or parenting plan] incorporated into a divorce decree is determined according to the usual rules of contract construction, and the cardinal rule thereof is to determine the intent of the parties. Construction of a contract by the court involves three steps. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. Secondly, if ambiguity does appear, the existence or nonexistence of an ambiguity is a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.

*Frier v. Frier*, 303 Ga. App. 20, 21 (692 SE2d 667) (2010) (citation omitted).

As noted above, the relevant language of the parenting plan "summer vacation weeks" provision is as follows: "Each parent shall be entitled to two consecutive weeks of uninterrupted parenting time with the minor children during the children's summer vacation from school." We discern no ambiguity in this language. "Ambiguity in a contract is defined as duplicity, indistinctness, or an uncertainty of meaning or expression." *Frier*, 303 Ga. App. at 21 (citation and punctuation omitted). Giving effect to the plain meaning of the "summer vacation weeks" language in the parenting plan, we conclude that the provision provides that each parent may select two *consecutive* weeks of *uninterrupted* parenting time during the children's summer vacation. The question in this case is whether the language in the parenting plan is sufficiently broad to give each parent, as found by the trial court, "up to" 14 additional days of visitation in the summer, which can be selected non-consecutively. We conclude that it is not.

The parenting plan provides for joint custody and visitation throughout the year. The plan does not alter the custody and visitation provisions in the summer months, except for providing that a party may select "two consecutive weeks of uninterrupted parenting time with the minor children during the children's summer vacation from school." Nothing in the parenting plan or the "summer vacation weeks"

15

provision obligates each parent to take their two consecutive, uninterrupted weeks, but neither does anything in the parenting plan or "summer vacation weeks" provision entitle each parent, as found by the trial court, "up to" 14 additional days of parenting time during summer vacation over and above the normal parenting schedule, instead of two consecutive weeks of uninterrupted parenting time. We agree with the mother that the trial court's interpretation – essentially permitting the father to take 14 additional days of parenting time spread throughout the summer – not only potentially forecloses the mother's opportunity to select two consecutive weeks of uninterrupted time during the children's summer vacation, but also defeats the intent of the parenting plan: to allow each parent two weeks of uninterrupted time during which to take a vacation or otherwise spend time with the children and not worry about the normal custody and visitation schedule.

Moreover, if we were to read the "summer vacation weeks" language in the parenting plan as the father and the trial court suggest, it would render the phrase "two consecutive weeks" and the word "uninterrupted" meaningless. "It is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to

16

all of the contractual terms." *Forsyth County v. Waterspace Svcs., LLC*, 303 Ga. App. 623, 631 (2) (a) (694 SE2d 102) (2010) (citation and punctuation omitted).

In fact, this Court previously has found similar language in a parenting plan clear and unambiguous. See *Park-Poaps v. Poaps*, 351 Ga. App. 856, 860 (1) (833 SE2d 554) (2019). In *Park-Poaps*, the mother informed the father that she wanted to take the children out of the country during a two-week period, and the father responded that he was exercising his right under the parenting plan to select the same two-week period as his two weeks of parenting time during the summer. Id. at 859-860 (1). This Court held that "the father was entitled to select two consecutive weeks of summer vacation with the children . . . and a party is entitled to rely on the plain terms of a court order until such provisions are modified by the court[.]" Id. at 860 (1) (citation and punctuation omitted).

The father asserts that this Court should affirm the trial court's denial of the mother's motion for declaratory judgment as "right for any reason" because the father stated he did not contest the motion. According to the father, the trial court was obligated to deny the motion, as it did, and the reason for its denial is irrelevant. Not only does this argument fail because, as stated above, we find that a justiciable controversy existed regarding the parenting plan language, but the father's argument

17

neglects the fact that the trial court issued a ruling erroneously interpreting the "summer vacation weeks" language. It is well established that the right for any reason rule does not apply because "[w]here it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm." *Nissan North America, Inc. v. Walker-Jones Nissan, LLC*, 345 Ga. App. 447, 455 (1) (812 SE2d 130) (2018) (citation omitted).

The father also appears to argue that the trial court's order can be construed as a modification of the parenting plan. According to the father, the trial court possessed authority to modify the parenting plan because the mother brought her motion for declaratory judgment at the same time she filed a modification action. Pretermitting whether the trial court could properly modify the parenting plan under the circumstances presented in this case, it is clear from the trial court's order that the court was merely interpreting, not modifying, the "summer vacation weeks" language.

The trial court's denial of the mother's request for declaratory judgment is hereby reversed.

2. The mother next asserts that the trial court abused its discretion in awarding attorney fees to the father under both OCGA §§ 9-15-14 (b) and 19-9-3 (g) based on its erroneous ruling regarding the motion for declaratory judgment. We agree.

18

"As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract." *Cothran v. Mehosky*, 286 Ga. App. 640, 641 (649 SE2d 838) (2007) (citation omitted). Here, the father sought, and the trial court awarded, attorney fees under both OCGA §§ 9-15-14 (b) and 19-9-3 (g). We turn first to the award under OCGA § 9-15-14 (b).

(a) *OCGA § 9-15-14 (b)*. Pursuant to OCGA § 9-15-14 (b), a trial court may award attorney fees if a party "brought or defended an action, or any part thereof, that lacked substantial justification" or "was interposed for delay or harassment," or if a party "unnecessarily expanded the proceeding by other improper conduct." The statute defines "lacked substantial justification" to mean "substantially frivolous, substantially groundless, or substantially vexatious." OCGA § 9-15-14 (b). We review a fee award under OCGA § 9-15-14 (b) for an abuse of discretion. *Cohen v. Rogers*, 341 Ga. App. 146, 148 (2) (798 SE2d 701) (2017). "Under an abuse of discretion standard of review, we are to review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." Id. (citation and punctuation omitted).

The trial court in this case awarded $9,024.50 in attorney fees to the father pursuant to OCGA § 9-15-14 (b), based on a finding that the mother's pursuit of the declaratory judgment was "substantially vexatious and/or lacking in substantial justification." The court explained that the father presented evidence that from August 28, 2019, through the final hearing, he incurred $9,024.50 in fees in defense of the mother's request for declaratory judgment, which she refused to dismiss despite his repeated statements that he was not contesting the declaratory judgment. However, as our discussion in Division 1 shows, the mother's declaratory judgment action was not substantially vexatious, it did not lack substantial justification, and the father's summer vacation selections indicated he did not agree with the mother's interpretation of the summer vacation weeks language in the parenting plan. Our reversal of the trial court's interpretation of the "summer vacation weeks" language in the parenting plan shows that the mother's pursuit of clarity was legitimate. Accordingly, the trial court abused its discretion in awarding attorney fees under OCGA § 9-15-14 (b), and its award under that statute is reversed. See *Hardman*, 295 Ga. at 739 (4) (attorney fees awarded under OCGA § 9-15-14 reversed because declaratory judgment action did not lack substantial justification).

(b) *OCGA § 19-9-3 (g)*. Under OCGA § 19-9-3 (g), a trial court may award reasonable attorney fees, expenses of litigation, and other costs associated with a child custody action. OCGA § 19-9-3 (g) "affords wide discretion to the trial court to award reasonable attorney fees and expenses in child custody actions to be paid by the parties in proportions and at times determined by the judge." *Moore v. Moore-McKinney*, 297 Ga. App. 703, 712 (4) (678 SE2d 152) (2009) (citation and punctuation omitted).

The trial court in this case awarded the father $19,260.00 in attorney fees and litigation expenses pursuant to OCGA § 19-9-3 (g), finding that such fees were reasonably and necessarily incurred by the father through August 27, 2019, in defending against the mother's "child custody and parenting time claims, primarily in defense of the emergency hearing, and declaratory judgment." The court's order indicates that the fees were warranted because the mother "pursued her request for modification of custody, parenting time and declaratory judgment through August 27, 2019 when she notified [the father] that she wanted to dismiss the case"; the mother did not withdraw her request for modification of custody, though she also did not pursue it, when the father declined to dismiss his counterclaim for attorney fees; the mother filed an emergency motion for modification of summer parenting time that

21

was denied; the mother refused to withdraw her request for declaratory judgment; and the court had denied or was denying all of the mother's requests for relief.

The mother argues that OCGA § 19-9-3 (g) attorney fee awards are not authorized in a declaratory judgment action. The father does not dispute this assertion, he merely argues that the mother has waived the argument because she induced the alleged error when her counsel drafted the order.

Contrary to the father's argument, the order at issue indicates that it was "[p]repared and presented by" the father's trial counsel. While the mother's counsel may have redlined, reviewed, or even suggested language for a proposed order, that does not transform an adverse ruling into a consent judgment. See generally *Rude v. Rude*, 241 Ga. 454, 455 (1) (246 SE2d 311) (1978). In *Rude*, the Georgia Supreme Court noted that

> [w]here a final order is "approved by" counsel for both parties in writing . . . [i]t is not approval of the substance (result) of the order (if it were, the right of appeal would be waived), but a showing that counsel has seen the proposed order and agrees that it contains what the court orally directed be included in it. Counsel's "approval" thus is an indication of approval of the content or form of the order rather than its substance.

Id. at 455 (1). Accordingly, we cannot construe the trial court's inclusion of the phrase "declaratory judgment" with respect to OCGA § 19-9-3 (g) attorney fees as induced error, "surplusage" or "harmless error" as argued by the father.

Because the trial court's order does not limit its award of OCGA § 19-9-3 (g) attorney fees to fees incurred by the father related to sanctionable conduct by the mother with respect to the child custody action, it is hereby vacated, and the case is remanded for the trial court to determine the amount of attorney fees, if any, that should be awarded to the father based solely on any sanctionable conduct by the mother in pursuing her child custody claims. See *Hardman*, 295 Ga. at 740 (4).

*Judgment reversed in part, vacated in part, and case remanded. Reese, P. J., and Markle, J., concur*.